## PALMER *v.* THE STATE.

CRIMINAL LAW.—*Way.*—*Malicious Trespass.*—Where one has for a long time been in the habit of using a way across the land of another, and he believes in good faith that he has a right to use it, he will not be guilty of malicious trespass for removing a fence placed across such way.

From the Daviess Circuit Court.

*J. Baker* and *O. F. Baker*, for appellant.

*J. C. Denny*, Attorney General, for the State.

DOWNEY, C. J.—This was a prosecution for malicious trespass, based on an affidavit filed before a justice of the peace, charging that the defendant, on or about the 22d day of March, 1873, at, etc., did maliciously, mischievously, and unlawfully injure a rail fence of the value of fifty cents, the property of Ann E. Wright, James M. Wright, William C. Wright, Sarah Wright, and Laura S. Wright, by then and there throwing said rails of said fence down and upon the ground, to the damage of said Ann E. Wright, etc., in the sum of fifty cents, contrary to the form of the statute, etc.

The defendant was found guilty before the justice of the peace and appealed to circuit court, where, upon a trial by jury, he was again found guilty. He then moved for a new trial, which was denied him, and there was final judgment against him. He moved the court to relieve him from the payment of the costs of certain witnesses, summoned by the State but not examined, amounting to over fifty dollars, but this motion was also overruled. In view of the conclusion at which we have arrived upon the main question in the case, it is not necessary for us to consider the question relating to the taxation of costs.

We shall consider the case upon the question as to the sufficiency of the evidence to sustain the verdict of the jury, which was presented to the circuit court by the motion for a new trial, the overruling of which motion is assigned for error.

The prosecuting witnesses are the widow and children of

Roderick Wright, deceased, and they own by inheritance from him a tract of land in the form of an oblong, on the south side of which is a public highway, called the Washington and Apraw road. The defendant's land adjoins that of the Wrights on the north. From twenty-five to thirty years ago, there was a road or lane, extending from the above named highway north through the Wright land and the land of the defendant. This last named road was never laid out as a public highway, but was used by the public to a considerable degree. This was the condition of things when the Wright land was purchased by Roderick Wright, and the defendant's land was purchased by him. Twelve or fifteen years ago, the travel on the road was so light that the defendant closed up the road through his land, and the public acquiesced in this. He never, however, ceased to use the road himself from his premises through the Wright land to the Washington and Apraw highway. Roderick Wright threatened to stop up the road on his land by hanging gates across it, but on objection made by the defendant, he did not do so. About two years before the trial, Mrs. Wright said to the defendant that the lane was then used solely by him, and it was hard for her to keep two strings of fence simply for his accommodation. The defendant, at her request, put up the fence on the east side of the lane. She afterward attempted to bargain with him for the privilege of putting gates across the way, but they did not finally agree. Mrs. Wright then sent her son and another person, and had them build a fence across the way. The defendant having occasion to pass over the way, and finding the fence across it, tore it down and removed the rails out of the way. The Wrights then commenced the prosecution in this case for malicious trespass against the defendant, the affidavit being made by James M. Wright, one of the sons.

The ball of snow, which at first is easily rolled by a single hand, by its accumulations becomes so great that it can no longer be moved. The single spark will kindle a flame which

may increase to a conflagration.   " Behold how great a matter a little fire kindleth!"

This is a mode of litigation which should not only not be encouraged, but which should receive the unequivocal disapprobation of the courts.   The question here involved is one of purely private interest and concern, in which the State has not, and should not have, the least lot or share, except to furnish the necessary tribunal in which the parties may settle the controversy between them by the appropriate civil action.   Who doubts if the prosecuting parties had known that they must enter the lists on equal terms with the defendant, employing their own attorney instead of using the State's attorney, and being liable for the costs of the action which they might bring, in the event that they were unsuccessful, in like manner as the defendant was liable for costs if the case was decided against him, that they would have hesitated to embroil themselves and the vicinity in a tedious, vexatious, expensive, and perhaps unnecessary lawsuit? There is, in this case, no more real ground on which to prosecute the defendant for malicious trespass than there would be for an action for malicious prosecution of this case, to be brought by the defendant here against the prosecuting witnesses.   If there is any question about the defendant's ultimate right to the way in dispute, there certainly is no question as to the fact that he believed in good faith that he had such right, and that it was in pursuance of that belief that he removed the obstruction which had been placed in the way by the prosecuting parties.   Even the witnesses for the State testify that while he was in the act of removing the fence, he stated that " he had a right to have the lane open." There is an utter failure of evidence to show any malice on the part of the defendant in removing the fence.   The lane was thirty feet wide, and according to what we know of Virginia worm fence, it would require four panels to reach across the lane.   The number of rails required would probable be forty.   The jury found that the damage done to them by removing them out of the way—it is not shown

that they were otherwise injured—was fifty cents. This damage, we presume, is mostly imaginary. Some of the witnesses put the damage at fifteen cents. This is very exact!

In *Howe* v. *The State*, 10 Ind. 492, the defendant was indicted for destroying timber on the land of which he had possession, but there was a question whether the contract by which he held it was valid or not. The court said: "We think that a criminal prosecution cannot be maintained under the circumstances involved in this case. If any other ruling was to prevail, a man might be liable to prosecutions for acts committed whilst in the possession of lands under contracts declared fraudulent at the end of a long and doubtful lawsuit, in the nature of a chancery proceeding." *Windsor* v. *The State*, 13 Ind. 375, was a prosecution for malicious trespass, committed, as was alleged, upon a dwelling-house belonging to the trustees of a church; the defendant, claiming to be the owner, had removed the doors, etc. The court said: "We do not think a criminal prosecution a proper mode of trying the title to real estate. A person without color of title could not defeat a criminal prosecution for malicious trespass upon lands, by setting up a title thereto in himself; but where he has a paper title, apparently valid on its face, and claims, in good faith, to be the owner, and is in possession, either by himself or others occupying by his direction, he can not be prosecuted criminally for a trespass committed thereon by him, to the damage of a third person, although such third person, in the end, may prove to have the better title."

In *Goforth* v. *The State*, 8 Humph. 37, it was decided that where the defendant threw down the fence of another unlawfully and without right, under the impression that he had a legal right to do so, he was not guilty of malicious mischief. In *Dye* v. *The Commonwealth*, 7 Grat. 662, it was held that the statute of Virginia, to punish malicious trespass, was intended to apply to trespass upon the property of another, without color of title or claim of right *bona fide*, and not feigned for

the occasion ; and not to cases where there is a *bona fide* claim of right to the property.

*Regina* v. *Langford*, 1 Car. & M. 602, was an indictment against several persons, under a statute for the felonious demolition of a house.    PATTESON, J., said in his directions to the jury : "I think, also, that on this statute a felonious demolition of a house can only be where a number of persons begin to  demolish  or  actually demolish the house from some wrong motive or other.    If therefore you believe that there was a riot, and that these persons to spite the old man did that which the witnesses  have stated them to have done, it is a felonious demolition of the house within the meaning of this act of parliament.    But even if there was a riot, if you believe that the prisoners really thought that it was young Phillips' house" (Phillips being one of the prisoners), "and that they did all this *bona fide* in the assertion of a supposed right, that will take the case out of the operation of the statute, and  the  demolition of the house would not be felonious, and you ought to acquit the prisoners."    See further, on this subject, 1 Bishop Crim. Law, sec. 298, and vol. 2, sec. 996, 5 ed.

The judgment is reversed, and the cause remanded, with instructions to grant a new trial.