## LOSSEN *v.* THE STATE.

MALICIOUS TRESPASS.—*Highway.*—*Adjoining Proprietors.* — *Malice.*—*Presumption.*—A *de facto* neighborhood way, which had existed for years across the land of A., had gates across it for the accommodation of adjoining proprietors.  A., claiming to be the unincumbered owner of the land, removed the gates, erecting fences in their stead, whereupon B., a user of the way, doubting the right of A. to fence it, consulted counsel, and was advised that he had a right to take down sufficient of the fence to enable him to pass along the way, according to custom, which he did, and thereupon A. caused him to be indicted for malicious trespass.  The way had never been laid out by anybody having competent authority to establish highways, nor worked by any supervisor, but A. had knowledge from his grantors as to the character of the way and by whom it was used.

*Held*, that the legitimate inference from such facts is, that B. acted in good faith, in the belief that he had a right to use said way, and used it in that belief on the occasion charged in the indictment, and therefore, that he is not guilty as charged in the indictment.

*Held*, also, that malice will not be inferred from the act of taking down the fences, when the circumstances attending the commission of the trespass rebut the presumption of malice.

*Held*, also, that the primary object of the prosecution was not to determine the legality of the highway.  Such question would be more properly determined in a civil suit, upon which the parties might have stood more nearly upon equal grounds.

From the Rush Circuit Court.

*G. B. Sleeth, J. W. Study, L. Sexton* and *C. Cambern,* for appellant.

*B. L. Smith, W. A. Cullem* and *C. A. Buskirk,* Attorney General, for the State.

PERKINS, J.—Indictment for malicious trespass.  The indictment charged, that Hayden Lossen, the appellant, did then and there unlawfully, maliciously, etc., injure, and cause to be injured, a certain fence situate upon, etc., said fence being then and there the property of Augustus Miller, by then and there, etc., and thereby, permitting stock to get into the inclosure of said Miller, and the stock of said Miller to stray, etc., to his damage, etc.

The defendant was arraigned, pleaded not guilty, was convicted and fined in the sum of fifty cents.

A motion for a new trial was denied.

The only error assigned is the overruling of the motion for a new trial.

The grounds of the motion were:

1.  Finding is not justified by the evidence, and is contrary to law;

2.  Newly-discovered evidence.

The newly-discovered evidence, even had there been any diligence shown in the premises, could not have justified the granting of a new trial. It could not, legitimately, have had any material influence upon the decision of the cause. But we think the evidence given on the trial failed to make a case against the appellant. It will be stated with some fulness hereafter in this opinion.

In our law there are two general classes of trespasses. Those of both classes expose the committer to a civil action for damages. Both classes are torts. But those of one class only are crimes.

The criminal class embraces two kinds: One in which malice is an essential ingredient; the other in which it is not.

It is enacted in the criminal code, that " Every person who shall maliciously or mischievously injure, or cause to be injured, any property of another, or any public property, shall be deemed guilty of a malicious trespass, and be fined not exceeding two-fold the value of the damage done, to which may be added imprisonment not exceeding twelve months." 2 R. S. 1876, p. 462, sec. 13.

Section 14 of the same code specifies certain trespasses which are crimes without the ingredient of malice; but the case at bar falls under section 13, above quoted.

Civil liability for a trespass does not necessarily depend upon a particular state of mind or heart at the time in the

trespasser. Criminal liability, in one of the kinds of criminal trespass, does.

Did the facts in this case tend to establish a criminal trespass, under section 13?

The alleged trespass was committed by throwing down certain portions of fences.

A *de facto* neighborhood way had existed for years across the land of the prosecuting witness. There were three gates upon it for the accommodation of adjoining proprietors. In April, 1876, the prosecuting witness, claiming to be the unincumbered owner of the land, removed two of the gates and erected fences across the way in their stead. The defendant in the indictment, and a user of the way, doubting the right of the prosecuting witness to fence it up, consulted counsel, and was advised that the act of fencing was wrongful, and that he had a right to take down sufficient of the fence to enable him to pass along the way, according to custom. He did so, and thereupon the prosecuting witness caused him to be indicted for malicious trespass, on which indictment the conviction above mentioned was obtained.

The history and character of the way are given in the following admitted facts:

"It is admitted by the defendant and State, that the pass-way, over which the defendant travelled at the time the fence was alleged to have been thrown down, was never laid out by anybody having competent authority to establish highways; that it never was worked by any supervisor, or by men in that road district under charge of a supervisor; that there has been a line of travel, marked by wagon tracks, from the south side of said section of land to the north side, varying at times from one place to another; that said passage-way ran, varying somewhat, but in the general northern direction, and that said way has been used, varying as above stated, for the convenience of

Charles Lossen and Thomas Amos, and such persons who desired to visit them, or perform work for them, for the past sixteen years, and that Miller, the prosecuting witness, had knowledge of such facts of his grantors."

The controlling question in this case is, not whether the so-called highway, across which the fences were erected that the appellant took down, was or was not a legal highway, but whether he took down said fences maliciously or mischievously; though it may properly be observed, that proof that it was a legal highway might have been a defence to the prosecution.

The primary object of this prosecution, we may remark further, was not, or should not have been, to determine the legality of the highway. That question would be more properly determined in a civil suit, in which the parties might have stood upon more nearly equal grounds. *Windsor* v. *The State*, 13 Ind. 375 ; *Dawson* v. *The State*, 52 Ind. 478; *Palmer* v. *The State*, 45 Ind. 388.

We lay down this proposition as law applicable to this prosecution.

If the appellant believed in good faith, that he had a right to use said way, and used it in that belief, on the occasion charged in the indictment now before us, he was not guilty as charged in said indictment. *Palmer* v. *The State, supra.*

We think the legitimate inference from the evidence is, that he so acted in the premises.

Counsel for the State argue that the fact that appellant took down the fences was clearly proved, and that malice will be inferred from the act. This is not the rule where the circumstances attending the commission of the trespass rebut the presumption of malice, however it may be in other cases.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.