Hughes *et al. v.* The State.

Filed Oct. 27, 1885.

---

No. 12,035.

## HUGHES ET AL. *v.* THE STATE.

CRIMINAL LAW.— *Malicious Trespass.*— *Real Estate.*— *Title.*— *Evidence.*— Where, in a prosecution for malicious trespass to real estate in tearing down and removing a fence thereon, there was no evidence tending to prove that the real estate upon which the fence stood belonged to the person named in the affidavit as owner, a conviction can not be sustained.

SAME.— *Claim of Title.*—*Intent.*—Where the evidence shows that the trespass complained of consisted in the removal, by the employees of a railroad company, of a fence from real estate claimed by the company, to protect its rights, a charge for malicious trespass can not be rightfully prosecuted, in the absence of any malicious intent.

SAME.—*Private Wrongs.*—The machinery of the criminal law can not be properly invoked for the redress of merely private grievances.

From the Fayette Circuit Court.

*R. D. Marshall* and *W. C. Forrey,* for appellants.

*F. T. Hord,* Attorney General, *R. Conner, H. L. Frost,* and *L. H. Stanford,* Prosecuting Attorney, for the State.

NIBLACK, J.—An affidavit was filed before a justice of the peace of Fayette county, charging Martin Hughes, Louis P. Snyder, John Remington, Peter Bainbridge and others with having, on the 13th day of June, 1884, unlawfully, maliciously and mischievously injured the real estate of one Abram B. Conwell, by then and there unlawfully, maliciously and mischievously tearing down and removing a rail fence situate upon said real estate, to the damage of said real estate and of the said Conwell in the sum of $25.

The justice found the defendants, particularly named as above, guilty, and assessed and adjudged a fine against each one of them severally.

Upon an appeal to the circuit court, Hughes, Snyder and Bainbridge were tried together, the trial resulting in a verdict and judgment against all of them. A question was made at the proper time upon the sufficiency of the evidence to sustain the verdict, and that is really the controlling question now presented for our decision.

The leading facts which gave rise to this prosecution were substantially as follows: On the 14th day of March, 1854, the Junction Railroad Company, of which the Cincinnati, Hamilton and Indianapolis Railroad Company is the successor, purchased a tract of land, now in the city of Connersville, containing a fraction over eleven acres on which its freight and passenger depots were afterwards placed, and through which its main track and several side-tracks were laid. At the time of the purchase a starting point for the survey and description of the tract of land covered by it was agreed upon, but no deed was then made.

In April, 1866, Conwell laid out and platted a piece of land contiguous to the tract sold by him to the railroad company, into lots and streets known as "Conwell's northeast addition to Connersville." A question afterwards arose, and, as we infer from the evidence, still remains unsettled, whether this addition to Connersville did not lap over onto and encroach upon the railroad tract of land. In April, 1871, Conwell executed to the railroad company a deed of conveyance for a tract of land containing a fraction over eleven acres, which was intended and mutually understood as embracing the precise land bargained for by the railroad company in the first instance. Soon after this deed was executed, some one erected a rail fence along what the railroad company claimed to be the northern boundary of the tract of land thus conveyed to it by Conwell, and the company continued thereafter to claim title up to that fence. Some time after this fence was erected, nothing showing how long, Conwell became dissatisfied with its location as a boundary line between him and the railroad company, and asserted a claim to a strip of ground south of the fence which afterwards became disputed territory between him and the company. With the coming of the spring of 1884, the controversy over this strip of ground became more definite and aggressive, Early in May of that year, Conwell caused a new survey to be made of the premises, and that survey resulted in staking off and marking a line about four rods further south than the fence as the supposed true boundary line. The railroad company refused to recognize the correctness of that survey and so the controversy continued. In the meantime, some efforts looking to an amicable adjustment were made by the company under circumstances which gave some promise of success. With the view apparently of bringing matters to a crisis, Conwell, on the 13th day of June, 1884, caused the old fence to be moved further south and put up on or near the line indicated by the new survey. The chief engineer

of the Cincinnati, Hamilton and Indianapolis Railroad Company, which had some years previously succeeded to the property and franchises of the Junction Railroad Company, had, at the time, his office in Cincinnati, Ohio, and upon being informed of the change of the line of the fence telegraphed to the appellant Snyder, who was one of his subordinate officers at Connersville, to have the newly put up fence removed. Snyder accordingly, at about five o'clock in the afternoon of the same day on which it was erected, assembled a company of men in the employment of the railroad company, and caused the new fence in question to be thrown down and the rails scattered. Hughes and Bainbridge, the other appellants, were members of the company of men thus assembled by Snyder and assisted in the work of throwing down the fence.

It must be borne in mind, that the charge in this case was for an alleged injury done to the real estate of Conwell by tearing down and removing a fence situate upon and connected with such real estate, and not for any injury which may have been committed upon the fence itself. To sustain the charge made by the affidavit, it was, consequently, necessary to prove that the real estate upon which the fence stood belonged to Conwell. *Powell* v. *State*, 2 Ind. 550; Reinhard Criminal Law, 94.

Taken as a whole, there was no evidence either proving or fairly tending to prove that the title to any part of the disputed territory was in Conwell, or that he had ever been in possession of that strip of ground. The fair inference from the evidence was, that Conwell had for a considerable time asserted a claim of title to the disputed territory, and that both he and his agent had perhaps spoken of it and referred to it as his land, but no evidence was offered to formally sustain that claim of title, and nothing came out incidentally which could be properly construed as sustaining such claim. Conceding that the railroad tract of land did not extend be-

yond the line indicated by the last survey, it did not follow, in the absence of any evidence on the subject, that Conwell owned the land on the other side up to that line. Proof that the rails belonged to Conwell was not sufficient. If proof of property in, and injury to, the fence or rails was relied upon for a conviction, then the charge ought to have been for injury to the fence or rails, and not to the land. Then, also, the evidence tended to prove, and as to that there was seemingly no conflict, that at the time the chief engineer gave the order for the removal of the fence, he was under the impression that the land on which it had been placed belonged to the railroad company, and had no other object in view than the protection of the rights of the company; also, that the men who obeyed his order and threw down the fence did so under the belief that they were simply obeying a lawful order and doing what was presumably for the best interests of the company.

A civil action for a trespass may be maintained in a class of cases for the purpose of testing and settling a question of title, but a charge of malicious trespass can not be rightfully prosecuted for such a purpose, since, however conclusive the evidence of title in the prosecuting witness may be, the defendant may nevertheless be acquitted on proof of a *bona fide* claim of title, and in the absence of any malicious intent in the transaction. Besides, the machinery of the criminal law can not be properly invoked for the redress of merely private grievances. Moore Crim. Law, section 987, *et seq.; Howe* v. *State,* 10 Ind. 492; *Windsor* v. *State,* 13 Ind. 375; *State* v. *Bush,* 29 Ind. 110; *Palmer* v. *State,* 45 Ind. 388; *Dawson* v. *State,* 52 Ind. 478; *Lossen* v. *State,* 62 Ind. 437; *Gundy* v. *State,* 63 Ind. 528.

The evidence, as we find it in the record, impresses us very strongly with the belief that the controversy involved in this case is one which ought to have been determined by an appropriate civil action, and not by a resort to a criminal pros-

ecution. Everything considered, we feel constrained to hold that the verdict was not sustained by sufficient evidence.

The judgment is reversed and the cause remanded for further proceedings.

Filed Oct. 28, 1885.