**LILLY INDUSTRIES, INC., and Tulip Tree Investments, Inc., Plaintiffs,**

v.

**HEALTH–CHEM CORPORATION, Defendant.**

No. IP 96–1573–C H/F.

United States District Court, S.D. Indiana, Indianapolis Division.

July 30, 1997.

Brian K. Burke, Lewis D. Beckwith, Charles A. Grandy, Baker & Daniels, Indianapolis, IN, for Plaintiffs.

Pierre C. Talbert, Josh Moss, Katz, Randall & Weinberg, Chicago, IL, for Defendant.

### ENTRY ON DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

HAMILTON, District Judge.

The large, lingering, and often hidden legal consequences of environmental pollution have fostered some imaginative attempts to expand the scope of some common law tort doctrines. The principal questions at this stage of this case are whether a purchaser of real property may sue a prior owner for either nuisance or trespass based on the prior owner's alleged earlier pollution of the same parcel. The court concludes that the Indiana courts would not apply either doctrine to such claims.

This case is a dispute over who should be responsible for the costs of cleaning up environmental contamination at an industrial plant on property that plaintiffs purchased indirectly from defendant's predecessor. Plaintiffs Lilly Industries, Inc. and Tulip Tree Investments, Inc. allege that the property is contaminated with solvents, paint, latex-based paint products, and other materials containing hazardous substances. Plaintiffs allege that these contaminants were placed on the property while it was owned by Perfection Paint & Color Company, Inc., the predecessor in interest to defendant Health–Chem Corporation. Plaintiffs have filed a six-count complaint against Health–Chem seeking compensatory and declaratory relief. Health–Chem has moved for judgment on the pleadings on four of the six counts. For the reasons discussed below, the court grants in part and denies in part defendant's motion for partial judgment on the pleadings.

### The Parties and Claims

For purposes of the motion for judgment on the pleadings, the court treats the allegations in the complaint as true. Perfection Paint & Color Company, Inc. operated a paint manufacturing facility at 715 East Maryland Street in Indianapolis, Indiana. Complaint ¶¶ 1. 19. Defendant Health–Chem is the successor in interest to Perfection Paint & Color. Complaint ¶ 7. On May 15, 1984, Indiana Paint Corporation entered into an

asset purchase agreement for the business and assets of Perfection Paint & Color, including the facility at 715 East Maryland Street. Complaint ¶ 5. Plaintiff Tulip Tree Investments, Inc. is the successor in interest to Indiana Paint Corporation. Complaint ¶ 5. On February 28, 1989, Lilly Perfection, Inc., now known as Lilly Industries, Inc., entered into an agreement to purchase the assets of Perfection Paint & Color from Tulip Tree. Complaint ¶ 6.

Plaintiffs allege that while Perfection Paint & Color owned the property at 715 East Maryland Street, it disposed of and released hazardous substances on the property. Complaint ¶¶ 9, 10. Plaintiffs allege that they have incurred costs in cleaning up the hazardous materials on the property. Complaint ¶ 8. Plaintiffs further allege that during and prior to Perfection Paint & Color's ownership and operation of the facility, solvents, paint, latex-based paint products, and other materials containing hazardous substances were leaked and released onto the property. Complaint ¶ 13. Finally, plaintiffs allege that Perfection Paint & Color had actual knowledge of the release or threatened release of hazardous substances on the property while it owned the property and that Perfection Paint & Color failed to disclose that information to Indiana Paint at the time of the asset purchase agreement. Complaint ¶ 14.

Count I of plaintiffs' complaint seeks relief under the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607, for reimbursement of response costs and for damages incurred in dealing with environmental contamination on the property. In Count II, plaintiffs seek under CERCLA, 42 U.S.C. § 9613, a declaratory judgment on liability for response costs that will be binding on any subsequent action or actions to recover further response costs or damages. These claims lie within this court's original jurisdiction. 42 U.S.C. § 9613(b). Health–Chem has not moved for judgment on the pleadings on these CERCLA claims. All remaining claims arise under state law and all arise out of the same case or controversy relating to the alleged environmental contamination on the property. The court therefore has supplemental jurisdiction over the state law claims in Counts III, IV, V, and VI of plaintiffs' complaint. See 28 U.S.C. § 1367.

Count IV sets forth a claim for nuisance under Indiana Code § 34–1–52–1. Count V sets forth a claim for civil trespass, and Count VI seeks a civil remedy under Ind. Code § 34–4–30–1 for alleged criminal trespass under Indiana Code § 35–43–2–2. Health–Chem argues that it is entitled to judgment on the pleadings on these counts for two alternate reasons. First, Health–Chem argues that plaintiffs, as purchasers of the property, cannot maintain claims for nuisance or trespass against a prior owner of the same property for activities allegedly undertaken while the prior owner owned the property. Second, Health–Chem argues that the three state law tort claims are barred by the applicable statutes of limitations. Count III sets forth a claim for contractual indemnification alleging that Perfection Paint & Color breached warranties made to Indiana Paint in the asset purchase agreement. Count III further alleges that the breaches of warranties have caused a loss exceeding $1000, for which Perfection Paint & Color (and its successors in interest) agreed in the asset purchase agreement to indemnify Indiana Paint (and its successors in interest). Health–Chem argues that this claim is barred by the applicable statute of limitations. As explained below, the court concludes that plaintiffs can prove no set of facts that would entitle them to relief for nuisance, trespass or criminal trespass. The court also concludes that the contractual indemnity claim is not barred, at least on the pleadings, by the statute of limitations. Defendant's motion for judgment on the pleadings is therefore granted as to Counts IV, V, and VI, and denied as to Count III.

*Standard for Judgment on the Pleadings*

■ On defendant's motion for judgment on the pleadings, the court will take the allegations in plaintiffs' complaint to be true and will view them, together with reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiffs. *E.g.,*

*Flenner v. Sheahan,* 107 F.3d 459, 461 (7th Cir.1997); *Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th Cir.1993). Defendant is entitled to judgment on the pleadings if it appears beyond doubt from the pleadings that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *E.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The defendant's motion in this case raises questions of Indiana law. This court's responsibility is to decide those questions of law as this court concludes the Supreme Court of Indiana would probably decide them. *Wood v. Allstate Ins. Co.,* 21 F.3d 741, 743–44 (7th Cir.1994). Where a state's supreme court has not ruled directly on an issue, the Seventh Circuit treats decisions of the state's intermediate appellate court as strong indications of the supreme court's likely approach, unless there is some persuasive reason to believe otherwise. *General Acc. Ins. Co. of Am. v. Gonzales,* 86 F.3d 673, 675 (7th Cir.1996).

## Discussion

### Count IV—Nuisance

■ Plaintiffs allege that while Perfection Paint & Color owned the property, "solvents, paint, latex-based paint products, and other materials containing hazardous substances were leaked and released onto the Property." Complaint ¶ 13. Plaintiffs further allege that Perfection Paint & Color contaminated the property during its period of ownership. Plaintiffs seek to hold Health–Chem liable as Perfection Paint & Color's successor in interest for damages caused by this continuing "nuisance." Health–Chem seeks judgment on the pleadings on the nuisance claim on the grounds that Indiana law does not allow a current property owner to sue a former owner of the same property for a private nuisance based on alleged harm to the property in question.

Indiana law defines a "nuisance" as:

Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

Ind.Code § 34–1–52–1. The statute dates from 1881. Indiana courts have said: "The essence of a private nuisance is the use of property to the detriment of the use and enjoyment of another's property." *Lever Brothers Co. v. Langdoc,* 655 N.E.2d 577, 582–83 n. 3 (Ind.App.1995), citing *Wernke v. Halas,* 600 N.E.2d 117, 120 (Ind.App.1992); accord *Yeager & Sullivan, Inc. v. O'Neill,* 163 Ind.App. 466, 324 N.E.2d 846, 850 (1975) (same). Plaintiffs have not identified any Indiana court that has entertained a nuisance claim by a purchaser of property against a prior owner of the same property for actions (a) that affected the same property and (b) that were undertaken while the prior owner controlled the property.

To extend Indiana nuisance law to purchasers of property, plaintiffs rely principally on language in *Gray v. Westinghouse Electric Corp.,* 624 N.E.2d 49 (Ind.App.1993). In that case the plaintiffs lived near a dump owned by the City of Bloomington. Westinghouse had allegedly hired independent contractors to dispose of polychlorinated biphenyls ("PCBs") and other toxic chemicals at the dump. When plaintiffs' own properties became contaminated with PCBs. they sued Westinghouse under nuisance and other theories. *Id.* at 52. Westinghouse argued that it could not be held liable for any alleged nuisance because it did not own or control the property where the nuisance was located. *Id.* The appellate court rejected that argument. explaining: "Although most nuisance cases refer to the controversy as being between two landowners. it is because this is the norm, not because the law requires either party to be a landowner." *Id.* at 53 (footnotes omitted). The court went on to note that the nuisance statute

uses the broad term "whatever" to define the possible sources of a nuisance and it does not contain any reference to property ownership by the party creating the nuisance. This indicates the focus of the legislature was on protecting an individual's right to enjoy property from infringement by any source. *Accord Armory Park Neighborhood Association v. Episcopal Community Services in Arizona,* 148 Ariz. 1, 712 P.2d 914 (1985); *see also* 66 C.J.S.

*Nuisance* § 83. We hold that the party which causes a nuisance can be held liable, regardless of whether the party owns or possesses the property on which the nuisance originates.

624 N.E.2d at 53.[1] The appellate court therefore allowed the nuisance claim to proceed against Westinghouse, a party allegedly involved in causing the nuisance.

■ Plaintiffs here emphasize the phrase "infringement by any source" in the quoted passage and contend that the *Gray* court's reasoning logically extends to prior owners of the same property. The argument fails to acknowledge the context of the court's statement in *Gray.* The court held that an action would lie against a party who did not *own or control* the neighboring property if that party nevertheless caused the nuisance. The court in *Gray* had no occasion even to consider the issue presented here, which presents a fundamentally different set of competing interests and policy considerations. Not every sentence in a judicial opinion can be carried to its logical conclusion in different contexts. See *Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994) (referring to "canon of unquestionable vitality, the 'maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.' *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821)."). As the Supreme Court continued in *Cohens,* if general expressions "go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821). The "general expression" in *Gray* of "infringement by any source" will not bear the weight of plaintiffs' argument here.

The law of private nuisance, both in Indiana and in most of the United States, provides a mechanism for resolving conflicts between competing, simultaneous uses of nearby property by different landowners. The law of private nuisance has developed on the assumption that the parties to a nuisance case do not have prior contractual relationships with one another in which their interests might have been resolved by agreement. Nevertheless, in the wake of new claims and litigation involving long-term environmental contamination of property—especially industrial property—recent years have seen numerous efforts to extend nuisance law to the relationship between buyer and seller of the same property. The vast majority of these efforts have failed. The Third Circuit explained why in the leading case on the subject, *Philadelphia Electric Co. v. Hercules, Inc.,* 762 F.2d 303 (3d Cir.1985) (applying Pennsylvania law). In that case a property owner brought nuisance and other claims against a company whose predecessor in interest had owned the property. The plaintiff argued that the predecessor had caused environmental contamination during its period of ownership.

The Third Circuit assumed that the contamination could amount to a nuisance that harmed neighboring properties and that the prior owner could still be held liable to neighboring landowners for the nuisance. The court decided, however, that the prior owner could not be liable to a subsequent purchaser of its property under a private nuisance theory. *Id.* at 313. In terms of tort law, a property owner owes no duty under the law of nuisance to later purchasers of the property. The court explained that the "historical role of private nuisance law [was] as a means of efficiently resolving conflicts between *neighboring,* contemporaneous land uses." *Id.* at 314 (citation omitted) (emphasis in original). This limitation is based on the different positions that neighbors and buyers occupy: "Neighbors, unlike the purchasers of the land upon which a nuisance exists, have

---

1. In the Arizona case cited by the Indiana court the Supreme Court of Arizona held that the operator of a community center that provided free meals to indigent persons could be held liable for the actions of its clients on adjoining properties before and after the meals served at the center. *Armory Park Neighborhood Ass'n v. Episcopal Community Servs. in Arizona,* 148 Ariz. 1, 712 P.2d 914, 920 (1985). The causal connection between the center's activities and the harm to neighboring landowners was sufficient. The Arizona court did not address any question concerning relationships between property sellers and buyers.

no opportunity to protect themselves through inspection and negotiation." *Id.* Thus, purchasers have the ability to adjust the market price of the property to reflect environmental damage, as well as the risks posed by possible, but unknown environmental damage. Allowing a private nuisance action by the purchaser would nullify the parties' (or the broader market's) allocation of those risks. See *id.* at 314–15.

The Third Circuit's reasoning on this point has been followed by courts in many jurisdictions. Among the more recent federal cases. see, *e.g., Cross Oil Co. v. Phillips Petroleum Co.,* 944 F.Supp. 787, 792 (E.D.Mo.1996) (applying Missouri law); *Dartron Corp. v. Uniroyal Chemical Co.,* 893 F.Supp. 730. 741 (N.D.Ohio 1995) (applying Ohio law): *55 Motor Avenue Co. v. Liberty Industrial Finishing Corp.,* 885 F.Supp. 410, 421 (E.D.N.Y. 1994) (applying New York law); *Triffler v. Hopf,* No. 92 C 7193, 1994 WL 643237, at *8 (N.D.Ill. Nov. 4.1994) (applying Illinois law). That approach is also consistent with the Restatement (Second) of Torts, which defines liability for private nuisance as follows:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts § 822 (1979). Neither the definition nor the accompanying comments in the Restatement indicate any intention to cover a nuisance claim brought by a current landowner against a former owner based on prior use of the same parcel, or even to address the problems that would arise by allowing such a tort claim by a buyer against a seller with respect to matters that were possible subjects for negotiation and price adjustments.

However, the law in the United States is not uniform on this point. Plaintiffs rely on a California appellate court decision that disagreed with *Philadelphia Electric.* See

*Mangini v. Aerojet–General Corp.,* 230 Cal. App.3d 1125, 281 Cal.Rptr. 827 (1991); see also *Tenaya Associates Limited Partnership v. United States Forest Service,* No. CV–F–92–5375 REC., 1995 WL 433290 1993 U.S. Dist. LEXIS 20905 (E.D.Cal.1993) (applying California law and following *Mangini* ). In *Mangini* landowners brought nuisance and other claims against their former lessees who allegedly contaminated the property during the term of their lease. Relying on *Philadelphia Electric,* the defendant in *Mangini* argued that nuisance law did not apply. The California court responded:

> We cannot accept defendant's argument because, as we shall explain, the authorities on which it is premised do not correctly reflect California law. In particular, defendant fails to recognize that California nuisance law is a creature of statute. The California nuisance statutes have been construed, according to their broad terms, to allow an owner of property to sue for damages caused by a nuisance created on the owner's property. Under California law, it is not necessary that a nuisance have its origin in neighboring property.

281 Cal.Rptr. at 832. The *Mangini* court did not address the points made in *Philadelphia Electric* concerning the purposes of nuisance law and the fundamental difference between neighbors, who cannot protect their interests by negotiation, and buyers, who can. Instead, the *Mangini* court argued that the particular language of California's nuisance statutes, the legislative history of those statutes, and earlier decisions of the California courts supported a broader concept of a private nuisance action. See 281 Cal.Rptr. at 832–34. Neither the breadth of the statutory language nor the prior application of that language to disputes between neighboring landowners (or others with interests in neighboring lands) appears to be unique to California. Nevertheless, the *Mangini* court declined to follow *Philadelphia Electric* essentially on the ground that California nuisance law was unique. It appears that other states have not followed the *Mangini* approach to this question.

In light of the persuasive reasons argued by the Third Circuit in *Philadelphia Electric*

and the widespread acceptance of that reasoning around the nation, this court concludes that the Supreme Court of Indiana would probably adopt the holding of *Philadelphia Electric* and hold that a buyer of property may not sue a prior owner for nuisance based on activities undertaken on the same property and alleged to have harmed the same property. Plaintiffs can prove no set of facts in support of their claim in Count IV that would entitle them to relief under Indiana Code § 34–1–52–1. Defendant's motion for partial judgment on the pleadings is therefore granted as to Count IV of plaintiffs' complaint.[2]

### Counts V and VI—Trespass and Criminal Trespass

■ Plaintiffs allege in Count V that the contamination of the property they bought amounts to a "trespass" by Health–Chem's predecessor in the form of unauthorized entry of contamination onto the property and ongoing contamination of the property. They allege in Count VI that by allowing contamination of the property, Perfection Paint & Color "knowingly or intentionally interfered with the possession or use of the Property by Tulip Tree and Lilly without their consent." Complaint ¶ 53, and they seek treble damages for this alleged criminal trespass. Health–Chem seeks judgment on the pleadings on both of these claims on the grounds that the law does not recognize as a trespass any entry onto land by the landowner itself.

■ Under Indiana law, an "action for trespass requires the plaintiff to prove that he was in possession of the land and that the defendant entered the land without right." *Lever Brothers Co.,* 655 N.E.2d at 581–82 (citation omitted). In *Lever Brothers,* the Indiana appellate court held that the actual seepage of pollutants from a defendant's property onto the plaintiffs property could be actionable as a trespass, *id.* at 582, but nothing in that or any other Indiana case suggests that an action for trespass will lie against a prior owner for actions that affected the property at the time it owned that property. The Restatement (Second) of Torts is consistent with this limitation, for it defines liability for trespass as follows:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> > (a) enters land *in the possession of the other,* or causes a thing or a third person to do so, or
> >
> > (b) remains on the land, or
> >
> > (c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158 (1965) (emphasis added).

Courts around the nation have rejected similar efforts to sue someone for having trespassed on what was his or her own property at the time the action was taken. See, *e.g., Cross Oil Corp,* 944 F.Supp. at 793 (applying Missouri law); *Dartron Corp.,* 893 F.Supp. at 741–42 (applying Ohio law and noting that extension of trespass law would raise the same concerns as extension of nuisance law); *55 Motor Avenue Co.,* 885 F.Supp. at 423–24 (applying New York law); *Triffler,* 1994 WL 643237, at *7 (applying Illinois law); *Wellesley Hills Realty Trust v. Mobil Oil Corp.,* 747 F.Supp. 93, 99 (D.Mass. 1990) (applying Massachusetts law). Again, however, California law is to the contrary as stated in *Mangini,* 281 Cal.Rptr. at 842, and followed in *Newhall Land & Farming Co. v. Superior Court of Fresno County,* 19 Cal. App.4th 334, 23 Cal.Rptr.2d 377 (1993).

This court's task is to predict how the Supreme Court of Indiana would decide the question. The same considerations that favor the Third Circuit's refusal to extend nuisance law to this situation apply with equal force to a buyer's claim for trespass against a

---

**2.** In light of this ruling, the court need not address the parties' arguments concerning the statute of limitations governing this claim. Also, there is no indication here that Health–Chem's predecessor in interest was ever a neighbor of plaintiffs or their predecessors, as often happens when only a small parcel of allegedly polluted property is sold. Cf. *Dartron Corp.,* 893 F.Supp. at 741–42 (dismissing nuisance claim against Uniroyal in its role as prior owner of plaintiffs property, but denying summary judgment on nuisance claim against Uniroyal as continuing neighbor).

prior owner. Based on those considerations, the weight of authority nationally, and the absence of any indication in Indiana law that Indiana courts might disagree with that general rule, this court concludes that Indiana would not permit plaintiffs to sue the prior owner of their property for trespass based on actions the prior owner took while in lawful possession of the property that are alleged to have continued to affect that same property after the change of possession. Plaintiffs' complaint alleges that Perfection Paint & Color caused the contamination to occur on the property in question while Perfection Paint & Color owned the property, Complaint ¶¶ 9, 10. Such a use of the property by the owner could not possibly be unauthorized use of the property of another. There is no set of facts that plaintiffs could establish consistent with the complaint that would entitle them to relief under a trespass theory. Defendant is entitled to judgment on the pleadings on the claim for civil trespass in Count V.

■ Plaintiffs' effort to allege criminal trespass in Count VI is even more evanescent. In response to the defendant's motion, plaintiffs have made no effort to support the allegations of criminal trespass that are the foundation for their effort to obtain treble damages pursuant to Ind.Code § 34–4–30–1. They have not cited any Indiana authority even hinting that a person might be subject to criminal penalties for trespassing on his own property. Such actions are unknown in Indiana law. Plaintiffs also have not offered any authority from other jurisdictions authorizing application of criminal trespass laws in such cases. Plaintiffs also have made no effort to allege the criminal intent that distinguishes criminal trespass from civil trespass, and any suggestion of a criminal intent on the part of defendant Health–Chem, which is merely the *successor in interest* to a party that is accused of having trespassed by polluting its *own property*, would plainly be absurd. See *Myers v. State*, 190 Ind. 269, 273, 130 N.E. 116, 117 (1921) (criminal trespass law "was intended to punish those who wilfully and without a *bona fide* claim of right

commit acts of trespass on the lands of others"). Indiana courts have long discouraged efforts to use the law of criminal trespass to resolve civil disputes, and they have held that even a person who obtained possession to land through a fraudulent contract cannot be prosecuted for trespass. See *Myers,* 190 Ind. at 273, 130 N.E. at 117: *Hughes v. State,* 103 Ind. 344, 348, 2 N.E. 956, 958 (1885), *Dawson v. State,* 52 Ind. 478, 480–81 (1876); *Howe v. State,* 10 Ind. 492, 493 (1858) (otherwise "a man might be liable to prosecution for acts committed whilst in the possession of lands under contracts declared fraudulent at the end of a long and doubtful lawsuit"). Accordingly, defendant is also entitled to judgment on the pleadings on Count VI.[3]

### Count III—Contractual Indemnification

Count III alleges that Perfection Paint & Color warranted to Indiana Paint in the asset purchase agreement that the property covered by the agreement was in material compliance with "all requirements of the laws, statutes, rules, codes, ordinances and regulations of the federal, state, county, municipal or other governmental division having jurisdiction thereof." Complaint ¶ 36. Count III also alleges that Perfection Paint & Color warranted to Indiana Paint in the asset purchase agreement that the "financial statements set forth as exhibits to this Agreement present fairly the financial condition and results of operations of [Perfection Paint] and have been prepared in accordance with generally accepted accounting principles and applied on a basis consistent with previous years." Complaint ¶ 37. Count III further alleges that in Paragraph 14 of the asset purchase agreement, Perfection Paint & Color agreed to "indemnify [Indiana Paint] from any loss, damage or expenses including reasonable attorneys' fees, arising out of breach of any warranty or covenant by [Perfection Paint] hereunder to the extent such losses, damages and expenses in the agregate [sic] exceed $1000." Complaint ¶ 38. The key allegation for purposes of the pending motion states:

> statute of limitations governing plaintiffs' trespass claims.

**3.** In light of these rulings, the court need not address the parties' arguments concerning the

Health–Chem is liable for Perfection Paint's breaches of warranties and covenants and became obligated to indemnify the Plaintiffs once their losses, damages and expenses relating to such breaches of warranties and covenants exceeded $1000. Plaintiffs now have incurred losses, damages and expenses exceeding $1000.

Complaint ¶ 42.

Health–Chem argues that this claim accrued no later than May 15, 1984, when the asset purchase agreement containing the warranties and indemnification clause was executed. Health–Chem argues that under either the six-year statute of limitations in Indiana Code § 34–1–2–1 for damage to property or the ten-year statute of limitations in Indiana Code § 34–1–2–2(6) for breach of a written contract, plaintiffs' complaint was therefore untimely when filed on November 4, 1996. Plaintiffs contend that the applicable statute of limitations is the ten-year statute in Indiana Code § 34–1–2–2(6) for breach of a written contract. They argue that defendant's obligation to indemnify them did not accrue until they incurred $1000 in damages attributable to defendant's breach of warranty, so that the action for breach of the duty to indemnify accrued only recently (although they do not say exactly when). In its reply brief, Health–Chem argues that Count III states a claim for breach of the asset purchase agreement's warranty provisions, not a claim for breach of the contractual indemnity provision (which, Health–Chem argues, merely provides a limit on damages for breach of the underlying warranty).

### A. The Applicable Limitations Period

■ Count III is properly classified as a claim for breach of a written contract. The Indiana General Assembly has adopted a specific, ten-year statute of limitations governing claims "Upon contracts in writing other than those for the payment of money. . . ." Ind.Code § 34–1–2–2(6). Health–Chem argues briefly that the substance of this count is a claim for damage to real property. However, the source of the duty allegedly breached here was the written contract, and that makes this a claim for breach of a written contract. Taking Health–Chem's argument to its logical conclusion, all claims for contractual indemnity arising from a sale of real property would properly be classified as claims for damage to real property. Plaintiffs' claim for breach of contractual indemnity is subject to the ten-year statute for claims for breach of a written contract.

### B. Accrual of the Cause of Action

■ The next question here is whether plaintiffs' cause of action accrued when the original warranties were made, which was on or before the closing of the asset purchase agreement on May 15, 1984, see Complaint ¶ 40, or whether instead the cause of action accrued when plaintiffs incurred more than $1000 in damages resulting from the circumstances that amounted to a breach of the warranty. Neither party has submitted to the court the full text of the asset purchase agreement.[4] Nor has either party specified when plaintiffs incurred any expenses attributable to defendant's alleged breaches of warranty. Plaintiffs argue that because Health–Chem has not identified any facts or allegations to suggest that plaintiffs incurred losses of more than $1000 more than ten years prior to the filing of plaintiffs' complaint on November 4, 1996, defendant's motion for judgment on the pleadings on this Count must be denied.

---

4. Defendant attached a copy of the asset purchase agreement as an exhibit to a proposed amended answer and counterclaims, which was tendered with a motion for leave to amend on July 25, 1997. That motion is not yet ripe for decision. Because the agreement was not provided in connection with the motion for partial judgment on the pleadings, the court has not tried to dissect the agreement on its own.

The court also notes that defendant has been permitted to proceed without counsel who is resident in this district. The court expects counsel appearing *pro hac vice* to read the local rules of this court. Counsel should note Local Rule 15.1, which ordinarily requires a party amending its pleading to reproduce the entire pleading as amended so that, for example, a defendant's complete answer, affirmative defenses, and counterclaims may be found in one document. In addition, counsel should note that no "Notice of Motion" is necessary in this district. A motion, when properly filed and served, gives sufficient notice of itself.

Warranties backed by promises of indemnification are important elements of business transactions like those involved in this case. These contract terms give the buyer of a property or business some protection against the risks that the property or business has some unknown defect, danger, or contingent liability. They can also save the buyer the expense of a thorough and independent evaluation of a particular aspect of the transaction. A warranty is "an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past."

*Shambaugh v. Lindsay*, 445 N.E:2d 124, 127 (Ind.App.1983). quoting *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946). Similarly, indemnity clauses "reflect a reasonable allocation of risks and duties to insure achieved through negotiation between the parties." *Hays v. Mobil Oil Corp.*, 736 F.Supp. 387, 392 (D.Mass.1990) (citation omitted), *aff'd in part, vacated in part on other grounds*, 930 F.2d 96 (1st Cir.1991). Parties are free to execute contracts with no indemnity provision at all. They are also free to execute contracts with indemnity provisions of expressly limited duration. *E.g., Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994, 1004 (D.N.J.1988) (parties executed contract with two-year limit on promise to indemnify). There is no allegation of an express limitation on the warranties in this case. The parties did, however, limit the indemnification provision to hold the seller accountable only for losses, damages and expenses in excess of $1000.

Under Indiana law and the terms of the asset purchase agreement, plaintiffs' claim for indemnification did not accrue until they incurred "losses, damages and expenses" in excess of $1000 arising from the breach of any warranty in the contract. Before that time, under Indiana law, any claim for damages by plaintiffs would have been properly dismissed as premature. See *Essex Group, Inc. v. Nill*, 594 N.E.2d 503, 507 (Ind.App.

1992) ("The obligation to indemnify does not arise until the party seeking indemnity suffers loss or incurs damages."): accord, *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 526 (7th Cir.1993) (cause of action for indemnification does not accrue until quantifiable harm has been suffered). *Southland Corp.*, 696 F.Supp. at 1004 (any cause of action based on breach of the contract's indemnity provision accrued at the time defendant failed to respond to plaintiffs claim for indemnity). *Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel*, 832 F.Supp. 922, 935 (E.D.Pa.1993) (citation omitted) ("The cause of action for indemnification does not accrue until a prospective indemnitee actually makes payment to a third party."); *General Conference of Seventh–Day Adventists v. AON Reinsurance Agency, Inc.*, 826 F.Supp. 107, 109 (S.D.N.Y. 1993) (indemnity claim accrues upon payment of claim to third party).

The Indiana and Seventh Circuit decisions cited above, *Essex Group v. Nill* and *Midwest Commerce Banking v. Elkhart City Centre*, did not specifically address the issue of accrual for purposes of a statute of limitations, but their reasoning supports plaintiffs' position here. The parties have not identified for the court any applicable authority from the Indiana courts on the question of accrual of claims for contractual indemnity. In an analogous situation, however, the Indiana appellate court has held that a surety's cause of action against his principal accrues only after the surety has actually made payment on behalf of the principal. *Runkle v. Pullin*, 49 Ind.App. 619, 97 N.E. 956, 958 (1912). The court had to decide both when and where (for choice of law purposes) the surety's claim had accrued:

> The cause of action does not exist until that is done which gives a right to maintain a suit to enforce it. In this instance, the payment of the money by the surety was the act which gave him the cause of action against his principal. The necessity for such payment was occasioned by the default of appellant.

97 N.E. at 958. This reasoning appears to be equally applicable to the claim for contractual indemnity in this case. Plaintiffs' claim

for indemnity did not accrue until plaintiffs incurred losses in excess of $1000 arising from any breach of warranty in the agreement.

The parties have not made any specific allegations or showing as to when plaintiffs suffered losses, damages and expenses in excess of $1000 arising from any breach of warranty. On Health–Chem's motion for judgment on the pleadings, the court must view plaintiffs' complaint and all reasonable inferences in the light most favorable to the plaintiffs. *Flenner,* 107 F.3d at 461. Because Health–Chem has not shown that it appears beyond doubt from the pleadings that plaintiffs' claim for contractual indemnity accrued before November 4, 1986, the motion for judgment on the pleadings must be denied as to Count III of plaintiffs' complaint.

### *Conclusion*

The pleadings establish that there is no set of facts under which plaintiffs could state a claim for nuisance, trespass, or criminal trespass against defendant, a successor in interest to a prior owner of the same parcel of land who is alleged to have polluted the same land. Defendant's motion for judgment on the pleadings is therefore granted as to Counts IV, V, and VI of plaintiffs' complaint. Plaintiffs' cause of action for contractual indemnity accrued when they incurred more than $1000 in losses, damages and expenses as a result of defendant's alleged breach of warranty. Defendant has not established that such loss was incurred more than ten years prior to the filing of plaintiffs' complaint. Defendant's motion for judgment on the pleadings is therefore denied as to Count III of plaintiffs' complaint.

So ordered.