Donald CARNAHAN and Joyce Carnahan, Husband and Wife, Appellants (Plaintiffs below),

v.

MORIAH PROPERTY OWNERS ASSOCIATION, INC., et al., Appellees (Defendants below).

No. 45S03–9909–CV–492.

Supreme Court of Indiana.

Sept. 27, 1999.

---

Paul A. Rake, Gregory A. Crisman, Hammond, IN, Attorneys for Appellants.

Charles R. Deible, Hammond, IN, Attorney for Appellees.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

The Moriah Property Owners Association, Inc., which owns approximately 64% of a private lake, seeks to restrict watercraft use on it. The Carnahans, who own a portion of the lake, oppose the restrictions. They contend that they have a prescriptive easement for the recreational use of motorized watercraft on the entire lake. We hold that the Carnahans have failed to establish a prescriptive easement.

### Background

Lake Julia is an approximately 22–acre lake located in Lake County. Prior to 1972, the lake and all the surrounding property were owned by Charles and Julia Drewry. In November of 1972, the Carnahans purchased a lot from the Drewrys, which was approximately one acre in size and included a portion of the lake bed. From the beginning, the Carnahans engaged in recreational activities including ice skating, fishing, swimming, and the use of various watercraft on portions of the entire lake. In the spring of 1973, the Carnahans placed a houseboat on the lake. They powered the houseboat around the lake, skied behind it, and lived on it intermittently until 1976 when they finished building a lakeside home. Thereafter, they used a ski boat on the lake until 1986, and wave runners and jet skis through the summer of 1993.

On July 26, 1984, the Carnahans purchased an adjacent one acre plot; approximately one-fifth of this new acreage constituted the lake bed. Beginning in 1987, the land around and under Lake Julia was surveyed and an engineering plan prepared which platted various lots comprising the Julia and Lake Additions to Lake County. On December 29, 1987, the Carnahans acquired an additional adjacent 1.2 acres of land; approximately one-eighth of this new acreage included the lake bed. Our calculations suggest that at this point, the Carnahans owned just over half an acre (or 2.5%) of the total 22–acre lake bed.

On December 24, 1991, the current Moriah Property Owner's Association, Inc. ("Moriah") obtained the property rights to a majority of the lake bed including nearly all of the water above it suitable for the operation of watercraft. This property is now legally described as Lot 8, Moriah Addition to Lake County. Lot 8 is 15.6 aces, and 14.1 acres constitutes the lake. Our calculations suggest that this 14.1 acres comprises approximately 64% of the 22–acre lake bed.

In April 1992, Moriah prepared restrictive covenants which included rules intended for the safe use of that portion of Lake

Julia described as Lot 8. The relevant restrictive covenant relating to the Carnahans' claimed prescriptive easement for the recreational use of watercraft on Lake Julia states as follows: "No motors are allowed on the lake except electric trolling motors powered by no more than two 12–volt batteries." (R. at 78.) In July 1992, the president of Moriah sent documents to the Carnahans including among other things the restrictive covenants for the use of Lot 8.

On May 21, 1993, the Carnahans filed this lawsuit to establish a prescriptive easement for the use of watercraft on Lake Julia and to quiet title in the easement; they also sought a declaratory judgment regarding their rights in relation to Moriah, and sought to enjoin any interference with their real property, easement, and riparian rights. In July 1993, Moriah cross-claimed and counter-claimed alleging that the Carnahans' and another family's use of motorized watercraft on Lake Julia presented a threat to adults and children who swam in the lake. Moriah requested an injunction to prevent the further use of watercraft on Lake Julia.

The trial court ultimately determined that the Carnahans had established a prescriptive easement for the recreational use of motorized watercraft on Lake Julia, but also determined that Moriah could restrict the Carnahans' and others' use of Lake Julia as provided in the restrictive covenants.[1] The Court of Appeals affirmed the trial court as to finding a prescriptive easement, but reversed as to finding that Moriah could limit the Carnahans' use of Lake Julia with its restrictive covenants. *Carnahan v. Moriah Property Owners Ass'n,* 688 N.E.2d 432 (Ind.Ct.App. 1997) (unpublished table decision).

*Discussion*

I

The Carnahans contend that they have a prescriptive easement over an entire body of water. Prior Indiana decisions adjudicating riparian rights in the context of easements almost exclusively concern land access to the water itself or the construction and use of a dock. *See, e.g., Klotz v. Horn,* 558 N.E.2d 1096 (Ind.1990); *Abbs v. Town of Syracuse,* 686 N.E.2d 928 (Ind.Ct. App.1997) (*"Abbs II"*), *transfer denied; Gunderson v. Rondinelli,* 677 N.E.2d 601 (Ind.Ct.App.1997); *Fleck v. Hann,* 658 N.E.2d 125 (Ind.Ct.App.1995); *Abbs v. Town of Syracuse,* 655 N.E.2d 114 (Ind.Ct. App.1995) (*"Abbs I"*), *transfer denied; Metcalf v. Houk,* 644 N.E.2d 597 (Ind.Ct. App.1994); *Brown v. Heidersbach,* 172 Ind.App. 434, 360 N.E.2d 614 (1977). These decisions address the riparian rights of lakefront property owners whose land only abuts the water. This case is different and concerns the competing rights of property owners whose real estate is incidentally covered by a relatively small, private lake. Therefore, any decision we make concerning an easement or use right must coincide with our common law as it applies to property underlying an inland, nonnavigable lake.

"A private lake is a body of water on the surface of land within the exclusive dominion and control of the surrounding landowners." *Freiburger v. Fry,* 439 N.E.2d 169, 173 (Ind.Ct.App.1982) (citing 1915–1916 OP.Ind.Att'y Gen. 703; *Patton Park, Inc. v. Pollak,* 115 Ind.App. 32, 55 N.E.2d 328 (1944)). Determinations of riparian rights of inland lakes are based upon whether a lake is navigable or nonnavigable. *Berger Farms, Inc. v. Estes,*

---

1. In its ruling, the court entered the following conclusion:

Considering the size of Lake Julia, the number of residents living on land adjacent to Lake Julia, and the other persons lawfully using Lake Julia for recreational purposes, the Court finds that the restrictions placed upon the use of Lake Julia by the Moriah Property Owners Association, Inc. as recorded on April, 2, 1992 are reasonable and that the use of Lake Julia should be restricted as therein provided.

(R. at 213; Conclusion of Law No. 10.) This conclusion is not affected by our holding in this opinion.

662 N.E.2d 654, 656 (Ind.Ct.App.1996) (citing *Bath v. Courts,* 459 N.E.2d 72, 75 (Ind.Ct.App.1984)). A nonnavigable lake is one "enclosed and bordered by riparian landowners." *Id.* (citing *Bath,* 459 N.E.2d at 75 (citing in turn *Stoner v. Rice,* 121 Ind. 51, 22 N.E. 968 (1889))).

■ This Court last determined the rights of a lake bed property owner in *Sanders v. De Rose,* 207 Ind. 90, 191 N.E. 331 (1934). Sanders owned approximately twenty acres of land covered by a "nonnavigable body of fresh water, known as Center Lake." *Id.* at 90, 191 N.E. at 331. De Rose was a non-property owner who gained access to the lake for fishing via the permission of another riparian owner, whose smaller portion of land both abutted and extended into Center Lake. In reversing the lower court and enjoining De Rose from fishing upon the waters of the lake overlying Sanders's property, this Court emphasized Sanders's rights with respect to other "owners of the bed of such lake." [2] *Id.* at 95, 191 N.E. at 333. It then set forth the common law rule as it applies to an inland, nonnavigable lake: "[E]ach owner has the right to the free and unmolested use and control of his portion of the lake bed and water thereon for boating and fishing." *Id.*

The Court of Appeals recently applied this rule in determining the property rights of competing lake bed owners. *See Trowbridge v. Torabi,* 693 N.E.2d 622, 627 (Ind.Ct.App.1998) (applying the rule "with equal force to a pond"), *transfer denied; Berger Farms,* 662 N.E.2d at 656 (quoting *Sanders* and holding that the majority owner of lake bed property could enjoin a minority lake bed property owner from engaging in recreational activities such as fishing and boating on his majority portion); *see also Patton Park,* 115 Ind.App. at 40–41, 55 N.E.2d at 331 (citing the "well established" rule of *Sanders* in determining the riparian rights of lake bed proper-

ty owners); *Millspaugh v. Northern Indiana Pub. Serv. Co.,* 104 Ind.App. 540, 548–50, 12 N.E.2d 396, 400–01 (1938) (quoting the rule of *Sanders* and stating that "the exclusive rights of fishing [in private waters] belong to the owners of the soil beneath the waters"). This rule has existed for quite some time in Indiana, and we see no reason to abandon it now. *See Nash Eng'g Co. v. Marcy Realty Corp.,* 222 Ind. 396, 409, 54 N.E.2d 263, 268 (1944) (stating that the "maxim [of *stare decisis* ] is most frequently applied where to disturb [a] prior ruling would probably affect real property and vested rights"). With this principle in mind, we proceed to determine the parties' competing property rights to the lake bed and nonnavigable body of water covering it, known as Lake Julia.

## II

■ Prescriptive easements are not favored in the law, *see* 25 Am.Jur.2d *Easements and Licenses* § 45, at 615 (1996 & Supp.1999), and in Indiana, the party claiming one must meet "stringent requirements," *Fleck v. Hann,* 658 N.E.2d 125, 128 (Ind.Ct.App.1995) (reversing lower court decision finding prescriptive easement for use of lakefront pier, because testimony was conflicted as to "adverse" or "permissive" use, thus claimants failed to meet the "stringent requirements that an adverse user must prove to acquire a prescriptive easement"). In order to establish the existence of a prescriptive easement, the evidence must show an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right. *Greenco, Inc. v. May,* 506 N.E.2d 42, 45 (Ind.Ct.App.1987). "Each . . . element[ ] . . . must be established as a necessary, independent, ultimate fact, the burden of showing which is on the party asserting the prescriptive title, and the failure to find any one of such elements

---

**2.** The Court did not base Sanders's right to exclude De Rose on De Rose's status as a non-property owner.

[is] fatal ..., for such failure to find is construed as a finding against it." *Monarch Real Estate Co. v. Frye,* 77 Ind.App. 119, 124–25, 133 N.E. 156, 158 (1921) (citing *Benedict v. Bushnell,* 65 Ind.App. 365, 117 N.E. 267 (1917)).

### A

■ Adverse use has been defined as a "use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right." *Nowlin v. Whipple,* 120 Ind. 596, 598, 22 N.E. 669, 670 (1889). The concept of *adversity* was developed in the context of establishing use rights over static paths or roads that crossed the property of adjoining landowners. The Court of Appeals affirmed the trial court's conclusion as to adversity by citing a prototypical *path or road* case for the proposition that "[a]n unexplained use for 20 years is presumed to be adverse and sufficient to establish title by prescriptive easement." *Carnahan v. Moriah Property Owners Ass'n,* slip op. at 7 (citing *Fleck,* 658 N.E.2d at 128 (citing in turn *Reder v. Radtke,* 132 Ind.App. 412, 417, 177 N.E.2d 669, 672 (1961) (quoting in turn *Mitchell v. Bain,* 142 Ind. 604, 607, 42 N.E. 230, 231 (1895)))).

■ We agree with the reasoning in the *Mitchell, Fleck,* and *Reder* decisions that "an unexplained use for 20 years" of an obvious path or road for ingress and egress over the lands of another creates a rebuttable presumption that a use was adverse. However, we are unwilling to recognize such a presumption in favor of a party trying to establish a prescriptive easement for the recreational use of a body of water. This is because recreational use (especially of a body of water) is of a very different character from use of a path or road for ingress and egress over land. Recreational use (especially of water which leaves no telltale path or road) seems to us likely to be permissive in accordance with the widely held view in Indiana that if the owner of one land

> "sees his neighbor also making use of it, under circumstances that in no way injures the [land] or interferes with [the landowner's] own use of it, [it] does not justify the inference that he is yielding to his neighbor's claim of right or that his neighbor is asserting any right; it signifies only that he is permitting his neighbor to use the [land]."

*Monarch Real Estate Co.,* 77 Ind.App. at 127, 133 N.E. at 159 (quoting *Anthony v. Kennard Bldg. Co.,* 188 Mo. 704, 724, 87 S.W. 921, 926 (1905)); *see also Bauer v. Harris,* 617 N.E.2d 923, 931 (Ind.Ct.App. 1993) (reversing the trial court's determination that a use was permissive because it was "not a case where an owner of property opens a road across his property for his own use, observes his neighbor also using the road, and the neighbor's use is presumed to be permissive because such use is consistent with the owner's title") (citing *Hutchinson v. Worley,* 129 Ind.App. 157, 164, 154 N.E.2d 389, 393 (1958) (quoting in turn *Monarch Real Estate Co.,* 77 Ind. App. at 127, 133 N.E. at 159)); *Brown,* 172 Ind.App. at 444, 360 N.E.2d at 621 ("Since the dominant titleholders' use of the easement for access was in no way inconsistent with the servient titleholder's rights ..., the use was not adverse."); *id.* ("If the facts and circumstances of a case lead to the conclusion that the use[ ] was merely permissive, they are fatal to the prescription.") (citing *Nowlin v. Whipple,* 120 Ind. 596, 22 N.E. 669 (1889)).

We thus conclude that claimants seeking to establish an easement based on the "recreational" use of another's property must make a special showing that those activities were in fact adverse; they will not be indulged a presumption to that effect. *Kessinger v. Matulevich,* 278 Mont. 450, 925 P.2d 864, 869 (1996) ("Recreational use is insufficient to raise a presumption of adverse use.") (citing *Public Lands Access Ass'n v. Boone & Crockett Club Found., Inc.,* 259 Mont. 279, 856 P.2d

525, 528–29 (1993)); *Ellis v. Municipal Reserve & Bond Co.*, 60 Or.App. 567, 655 P.2d 204, 207 (1982) ("For the public to establish a public recreational easement through prescription, the proof must be clear and positive; vague and general testimony is insufficient.").

 We have previously stated that "clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty." *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 159 (Ind.1994) (holding that to succeed in a reformation action, a party must show mutual mistake or fraud and original intent or agreement of the parties by clear and convincing evidence) (citing *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 360–61 (Ind.1982)). Therefore, we hold that a party seeking to establish a recreational prescriptive easement must show by clear and convincing evidence that their use was adverse.[3] This holding we base on the need for greater certainty in determining the true character of a "recreational" land use, for the recreational use of a neighbor's land will oftentimes be perfectly consistent with that neighbor's (the servient titleholder's) title to the land.

### B

 The trial court determined that the Carnahans presented evidence which established their right to a prescriptive easement for the recreational use of Lake Julia. The trial court entered findings of fact and conclusions of law pursuant to Ind. Trial Rule 52. " 'The purpose of special findings is to provide the parties and the reviewing court with the theory upon which the case was decided.' " *Buchonok v. Emerick*, 558 N.E.2d 1092, 1095 (Ind.1990) (quoting *ITT Indus. Credit Co. v. R.T.M. Dev. Co.*, 512 N.E.2d 201, 203 (Ind.Ct.App.1987)). We afford special findings a two-tier standard of review: first, we determine whether the evidence supports the findings; second, we determine whether the findings support the judgment. *Id.* at 1095–96. The findings are clearly erroneous only when a review of the record leaves us firmly convinced a mistake has been made. *Indiana State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1017 (Ind.1998) (citing *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind. 1994); *State v. Van Cleave*, 674 N.E.2d 1293, 1295 (Ind.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998)). We disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* (citing *Indianapolis Convention & Visitors Ass'n v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208, 211–12 (Ind.1991)).

 Because the facts involve a conveyance of the servient estate during and near the end of the 20–year prescriptive period,[4] we focus on the relationship between the Carnahans and the Drewrys,[5] which comprised over eighteen years of the relevant period.

The trial court's findings do not address whether the Carnahans' recreational use of the lake was adverse to the Drewrys.[6]

---

3. Although our research of Indiana law has revealed no cases (concerning "recreational" activities or otherwise) directly requiring that a claimant prove their adversarial use by clear and convincing evidence, we find instructive the majority of other states that require this standard in proving *every* element of a prescriptive easement. *See* 25 Am. Jur.2d, *supra*, § 136, at 705.

4. Ind.Code § 32–5–1–1 provides that "[t]he right of way, air, light or other easement from, in, upon, or over, the land of another, shall not be acquired by adverse use, unless such use shall have been continued uninterruptedly for twenty (20) years."

5. Between the time Moriah obtained delivery of the deed to Lot 8 (Lake Julia) in December 1991 and this lawsuit was filed in May 1993, the Carnahans' use of watercraft on Lake Julia was at all times adverse to Moriah's interest. (R. at 210–11; Conclusion of Law No. 3.)

6. The trial court only made one finding characterizing the Carnahans' use of the lake. It states as follows: "After receiving an equita-

They only track the Carnahans' periodic change in the use of recreational equipment over the years. (R. at 206–07; Findings of Fact Nos. 6–12.) Therefore, the findings of fact do not support the court's conclusion that the Carnahans' recreational activities constituted the "adverse seasonal use of Lake Julia."[7] (R. at 210–11; Conclusion of Law No. 3.)

On the other hand, the record does contain ample evidence supporting the inference that the Carnahans' use of the lake was both non-confrontational and permissive in recognition of the Drewrys' authority as title holders to a majority of the lake bed. For example, Mr. Carnahan testified that Mr. Drewry "would wave" to them as they anchored their houseboat in "plain sight of his house," but that they kept the houseboat "in the middle" as opposed to the "south side of the lake" so as not "to bother anybody." (Suppl. R. at 378.) When asked why they retired their ski boat in 1986, Mr. Carnahan responded that they "didn't want to tick off the neighbors." *Id.* at 382. There are other examples of the Carnahans' non-adversarial use of the Lake, such as Mr. Carnahan's statement that it had "been under [his] driving force that if people were on the lake fishing, [the Carnahans] stayed off," *id.* at 407, and Mrs. Carnahan's statement that "[i]f there are children in the lake, we are either not out there or we are at the opposite end," *id.* at 101.

We find the evidence establishes that the Carnahans' use of Lake Julia was not adverse and was insufficient to overcome the special showing required with respect to establishing a recreational easement. The Carnahans were engaged in a noncon-

sumptive, leisurely use of Lake Julia which neither diminished nor adversely altered the quantity or quality of the water. We recognize that the law did not require an affirmative act of hostility of the part of the Carnahans; nevertheless, we conclude that their occasional, recreational use was not inconsistent with the Drewrys' title as majority owners of the property underlying Lake Julia. We also note that the Carnahans' use of the lake was clearly distinguishable from De Rose's adversarial use of Center Lake at issue in *Sanders.* 207 Ind. at 91, 191 N.E. at 331–32 ("[De Rose] anchored his boats for hours under a claim of right ... in defiance of [Sanders]'s protest and request to depart, ... [while] assert[ing] that [Sanders] did not own the land so covered with water and had no right to exercise any control over the same...."). Accordingly, as a matter of law the trial court's judgment was not sustained in its findings nor on the record on the basis that the Carnahans established a prescriptive easement.

### Conclusion

We grant transfer pursuant to Indiana Appellate Rule 11(B)(3) and reverse the trial court's finding that the Carnahans had established a prescriptive easement.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SELBY, J., concurs in result without opinion.

---

ble interest in the described property, Don Carnahan and Joyce Carnahan, assuming that they had acquired riparian rights to use the whole lake, engaged in recreational use of the lake at large, through the use of various watercraft." (R. at 206; Finding of Fact No. 6.)

7. The full text of the trial court's conclusion is as follows:

The evidence presented by the Carnahans demonstrates an actual, uninterrupted re-

creational use for twenty (20) years under a claim of riparian right, or such continuous, adverse seasonal recreational use of Lake Julia with the knowledge and acquiescence of the owner, sufficient to meet the statutory requirements under Ind.Code [§] 32–5–1–1 for acquiring a prescriptive easement for recreational use.

(R. at 210–11; Conclusion of Law No. 3.)