

FILED

May 25 2018, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph R. Delehanty
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Steven Knecht
Lafayette, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Patricia M. Jones,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Von Hollow Association, Inc.,<br>*Appellee-Defendant.* | May 25, 2018<br><br>Court of Appeals Case No.<br>08A02-1709-PL-2175<br><br>Appeal from the Carroll Circuit Court<br><br>The Honorable Benjamin A. Diener, Judge<br><br>Trial Court Cause No.<br>08C01-1603-PL-4 |

**Altice, Judge**

## Case Summary

[1]     This case involves a dispute between Patricia Jones and the Von Hollow Association, Inc. (Von Hollow) over land abutting Lake Freeman in Carroll County. In 2016, Jones filed a complaint against Von Hollow seeking a declaratory judgment that she had a prescriptive easement over a portion of

Von Hollow's property to access a shorefront area and, ultimately, the Lake Freeman shoreline. She also sought an injunction to prevent Von Hollow from obstructing or interfering with her use of the claimed easement and for a judgment of trespass against Von Hollow. Von Hollow filed its answer and a counterclaim against Jones for trespass. Following a hearing, Jones's preliminary injunction motion was denied. After a bench trial, the court denied Jones's claims for declaratory judgment and trespass and entered judgment in favor of Von Hollow on its trespass claim against Jones. On appeal, Jones raises three issues, which we restate as:

> 1. Whether the trial court erred when it denied Jones's claim for a declaratory judgment that she had a prescriptive easement over Von Hollow's property.
>
> 2. Whether the trial court erred when it determined that Jones trespassed on Von Hollow's property and that Von Hollow did not trespass on Jones's property.
>
> 3. Whether the trial court erred when it directed an entity that is not a party to this appeal to issue Jones and Von Hollow joint rights in a licensed shorefront area.

[2]    We affirm in part, reverse in part, and remand.

## Facts & Procedural History

[3]    Von Hollow was formed in 1986 or 1987. Members of the Conway family (the Conways) are officers in the association, and Joseph Conway is a major shareholder. Von Hollow owns 3.446 acres on West Von Hollow Drive that are part of a residential subdivision and resort located on Lake Freeman in

Carroll County. Part of the Von Hollow property meets the shoreline of Lake Freeman while another part abuts a shorefront area that is owned by the Shafer and Freeman Lakes Environmental Conservation Corporation (SFLECC).[1] SFLECC issues a yearly shorefront license (the SFL) to Von Hollow that entitles Von Hollow to access the shorefront area and, ultimately, the lake, at the part where Von Hollow's property abuts SFLECC's shorefront area.

[4] Jones owns .566 acres at 11600 North Von Lane, located close to, but not directly on, Lake Freeman. Jones accessed the lake through the same SFLECC-owned shorefront area that Von Hollow utilized. SFLECC issues a separate, yearly SFL to Jones that entitles her to access the shorefront area over the part of her property that adjoins the shorefront area.

[5] A narrow strip of the Von Hollow property (the tail), that further narrows to a point (the corner), almost completely separates Jones's property from the shorefront area that her SFL entitles her to access. Jones's property only abuts the shorefront area at the corner, which measures less than one quarter of an inch wide.

[6] An asphalt and gravel roadway (the lane) runs along the Von Hollow property, through the shorefront area, to the lakeshore. Von Hollow controls access to the lane by means of a locked gate at one end of the lane. Historically, keys

---

[1] In addition to issuing licenses that permit access to the shorefront area, SFLECC dredges the lake and removes silt material. SFLECC acquired ownership of the shorefront area from Northern Indiana Public Service Company (NIPSCO).

were distributed to "[t]enants, renters, owners" within the Von Hollow subdivision and to some individuals who did not live within the subdivision. *Transcript Vol. 2* at 76.

[7] Jones's property was previously owned by George and Virginia Fischer. In 1994, the Fischers built stairs and a walkway from the house located on what is now Jones's property down to the shorefront area. Part of the walkway crossed over the tail of the Von Hollow property. Prior to the installation of the stairs and walkway, there were no steps or developed land access from the back of the house to the shorefront area.

[8] Two months after the stairs were completed, the Fischers sold the property to Ronald and Mary Lou Nutt. At the time of the sale, the Nutts received from the Fischers a key to the gate that provided access to the lane. Ronald Nutt testified that he used the lane daily to access the lake and that he occasionally used the stairs and walkway that led from his property, over the Von Hollow property, to the shorefront area. At times, instead of using his key to the lane gate, Nutt "would just simply drive [his tractor] around the end of the gate and drive down [to the shorefront area]." *Id*. at 44.

[9] The Nutts did not enjoy a good relationship with the Conways. In fall 1996, Von Hollow changed the lock on the lane gate and chose not to give the Nutts a key. Ronald, however, continued to use the lane, driving around the gate when necessary, though he was told by Joseph Conway not to do so.

[10]     In 1998, the Nutts sold their property to Jones and her (then) husband Paul. The Joneses received a key to the lane gate from the realtor. Unlike the Nutts, the Joneses enjoyed an amicable relationship with the Conways. Jones testified that they were friends and often socialized together. Between 1998 and 2015, the Joneses used both the lane and the stairs and walkway to access the shorefront area and the lake. The Joneses also could access the shorefront area from the lake, by boat. In 2006, Von Hollow again changed the lock on the gate. Von Hollow provided the Joneses with a key to the new lock.

[11]     Sometime between 2005 and 2007, the Joneses began to construct a deck at the bottom of their stairs. One of the Conways saw the construction and told the Joneses they needed to move the support posts because they were on the tail of the Von Hollow property. The Joneses complied.

[12]     In 2013, Paul and Jones divorced, and their property was transferred to Jones as sole owner. The good relationship between Jones and the Conways continued, however, until August 2015, when the relationship deteriorated. During the first week of August 2015, Jones constructed a retaining wall made of paving stones to prevent gravel from the lane from spreading. According to Jones, the wall was erected in the part of the shorefront area that her SFL allowed her to access; per Joseph Conway, it blocked access to the lane and made it impossible for the Conways to maneuver their boats to the water. The Conways told her that the wall needed to be moved, and Jones moved the wall. Shortly before Labor Day 2015, Von Hollow changed the lock on the lane gate. Jones was not provided with a key to the new lock.

[13]     On March 11, 2016, Jones filed a complaint and motion for hearing, requesting (1) a declaratory judgment that she had a prescriptive easement over both the lane and the tail of the Von Hollow property, (2) a preliminary injunction against Von Hollow to prevent it from obstructing or interfering with her use of the claimed easements over the Von Hollow property, and (3) a judgment against Von Hollow for trespass.  Von Hollow filed its answer, requesting that the court deny Jones's requests for preliminary injunction and declaratory judgment.  Von Hollow counterclaimed against Jones for trespass on its property.  On May 13, 2016, a hearing was held on Jones's motion for preliminary injunction.  On June 16, 2016, the court issued an order denying her motion, determining that Jones's use of the lane and tail was not adverse; rather, it was with Von Hollow's permission.  The court further determined that "Jones does not likely have an easement by prescription over the Von Hollow Property." *Appellee's Appendix Volume II* at 14.

[14]     In the summer of 2016, sometime after the trial court issued its June 16, 2016 order, Jones placed picnic tables and paving stones in the shorefront area and across a portion of the lane.  Eventually, she chained the tables together, placed "No Trespassing" signs on the tables, and installed security cameras.  The Conways moved the tables and paving stones because they were unable to drive down the lane to their boat slips.

[15]     On May 8, 2017, a bench trial was conducted on Jones's complaint and Von Hollow's counterclaim.  At the start of the trial, Jones informed the trial court that she did not wish to pursue her claim for a prescriptive easement in the lane.

Following the trial, the parties submitted proposed findings of fact and conclusions thereon. On August 21, 2017, the court issued its order, along with findings of fact and conclusions thereon. The court denied Jones's claim for declaratory judgment that a prescriptive easement existed over the tail and her request for injunctive relief. It also found against Jones on her trespass claim and in favor of Von Hollow on its trespass claim against Jones. Jones now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard*, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999). We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions. *Kwolek v. Swickard*, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011)

(citing *McCauley v. Harris,* 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), *trans. denied*), *trans. denied*.

[17] We also note that Jones appeals from a negative judgment. A party who had the burden of proof at trial appeals from a negative judgment and will prevail only if it establishes that the judgment is contrary to law. *Helmuth v. Distance Learning Sys. Ind., Inc.*, 837 N.E.2d 1085, 1089 (Ind. Ct. App. 2005). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead only to one conclusion, but the trial court reached a different conclusion. *Id.*

## 1. Prescriptive Easement

[18] Jones contends the trial court erred when it determined that she failed to establish she acquired a prescriptive easement over the tail of Von Hollow's property. She argues that she acquired a prescriptive easement over the disputed property because she and "her predecessors in title used a walkway over [the tail] continuously from 1994 to the present," and "Von Hollow took no steps . . . to either affirmatively place [Jones] on notice that it was ending her use of the walkway [over the tail] or that her use was by permission only." *Appellant's Brief* at 18, 22. She further argues that the trial court's findings are inconsistent and cannot be used to support the conclusions thereon.

[19] Von Hollow maintains the trial court correctly determined Jones's use of the tail was not adverse, but permissive. According to Von Hollow, Jones failed to "demonstrate the intent to claim full ownership of the tail (or the use thereof)

superior to the rights of others . . . [;]" "[s]he did not attempt to exclude Von Hollow from the tail; and she [acquiesced] when Von Hollow representatives told her to move her deck-in-progress." *Appellee's Brief* at 22.

[20] Prescriptive easements are not favored in the law. *Carnahan v. Moriah Prop. Owners Ass'n., Inc.*, 716 N.E.2d 437, 441 (Ind. 1999). For that reason, "the party claiming one must meet 'stringent requirements.'" *Id*. (citation omitted). Formerly, a party claiming the existence of a prescriptive easement was required to provide evidence showing "an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right." *Id*. (citation omitted). Further, each element had to be "'established as a necessary, independent, ultimate fact, the burden of showing which is on the party asserting the prescriptive title, and the failure to find any one of such element [is] fatal . . . , for such failure to find is construed as a finding against it.'" *Id*. (citations omitted, alteration in original).

[21] In *Wilfong v. Cessna Corp.*, 838 N.E.2d 403 (Ind. 2005), however, our Supreme Court modified the traditional elements of prescriptive easements to correspond to the Court's reformulated elements of adverse possession as follows:

> In our recent decision, *Fraley v. Minger,* 829 N.E.2d 476 (Ind. 2005), we reviewed the history of the doctrine of adverse possession in Indiana and reformulated the elements necessary for a person without title to obtain ownership to a parcel of land. We held that the claimant in such circumstances must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and (4) duration. *Id*. at 486. This reformulation applies as well

for establishing prescriptive easements, save for those differences required by the differences between fee interests and easements.

*Wilfong,* 838 N.E.2d at 406 (footnote omitted). The Court explained each of the elements as follows, noting their relationship with the previous requirements:

(1) Control – The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent – The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice – The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and

(4) Duration – The claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Fraley*, 829 N.E.2d at 485. The elements must be satisfied for a period of twenty years. *See* Ind. Code § 32-23-1-1 ("The right-of-way, air, light, or other easement from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least

twenty (20) years."). Whether a prescriptive easement exists is a question of fact. *Capps v. Abbott*, 897 N.E.2d 984, 988 (Ind. Ct. App. 2008).

[22]     Here, we find the element of intent dispositive. *See Corp. for Gen. Trade v. Sears*, 780 N.E.2d 405, 410 (Ind. Ct. App. 2002) (party asserting prescriptive easement has burden of showing each element "as a necessary, independent, ultimate fact, and the failure to establish any one of such elements is fatal"). In its findings of fact, the trial court stated in relevant part:

> 58.     Jones and Von Hollow enjoyed friendly relationships with one another[,] sharing the Shore Front License Area and engaging in many social activities together from the time [Jones] and her husband acquired their ownership in 1998 until 2015.
>
> *****
>
> 62.     Von Hollow was aware of Jones [sic] use of the walkway across the tail and permitted its use by Jones.
>
> 63.     Jones has never denied Von Hollow Association access to the tail.
>
> 64.     In 2006 or 2007 Jones, at the demand of Von Hollow Association, removed a deck that she had started building adjoining the walkway over the tail.
>
> 65.     Von Hollow Association never denied Jones access across the tail.

66. Jones crossed the tail with Von Hollow Association's knowledge and permission.

67. Jones can access and use her boat lift, improvements and the Shore Front License Area by water via Lake Freeman without using the lane or crossing the tail.

*Appellant's Appendix Vol. 2* at 16.  Based on the findings, the trial court concluded:

F. In the present case the use of the tail by Jones has not been adverse, rather with permission from Von Hollow as evidenced by the long standing friendly, cordial relationship they, historically, had enjoyed with one another.  Von Hollow requested Jones to move a deck which was being constructed on the tail adjacent to the walkway, which evidences the permissive nature of her use of the tail and demonstrates that Von Hollow was aware of Jones' use of the walkway and stairs and allowed use of same, until recently.  Jones has failed to establish the elements of control, intent and notice to establish an easement by prescription.

*Id*. at 19.

[23] At trial, Jones described her relationship with the Conways as "[g]reat." *Transcript Vol. 5* at 76.  She testified that she was friends with several members of the Conway family; that "[w]e just got a long [sic];" and that Jackie Conway, Joseph Conway's sister, was her best friend.  *Id*.  Joseph testified that his relationship with Jones was amicable and that she joined the Conways in social activities.  Additional testimony indicated that when Jones learned the deck her

family was installing needed to be moved because it was on the Von Hollow property, the deck was moved.

[24] In *Wilfong*, a case involving a situation similar to that of the instant case, our Supreme Court found "implied permission grounded in the cordial relationship between [two] families." *See Wilfong*, 838 N.E.2d at 407 (noting the "goodwill" and "very cordial relationship" between two families supported a finding of permissive rather than adverse use). Before *Wilfong,* this court found implied permission where there was evidence of a friendly relationship between two sisters. *See Searcy v. LaGrotte*, 175 Ind. App. 498, 372 N.E.2d 755 (1978). In *Monarch Real Estate Co. v. Frye*, 77 Ind. App. 119, 133 N.E. 156, 158-59, (1921), this court found that there was no inconsistency between the appellee's ownership of an alleyway and the permissive use of the same by the appellants, and that "where there is no inconsistency between the use and the ownership, there can be no prescriptive right."

[25] We conclude that the evidence supports the court's finding that Jones's use of the walkway over the tail was permissive, and the findings support the conclusion that Jones did not acquire a prescriptive easement over the tail. The trial court properly determined that Jones did not acquire a prescriptive easement over the tail.

## 2. Trespass

[26] Next, Jones challenges the trial court's conclusion that she committed criminal trespass when she "repeatedly plac[ed] picnic tables and paver stones in the

Shore Front License Area [and] interfered with Von Hollow's possession and use of its Shore Front License and its access to its Shore Front License Area improvements," and did so "knowingly, intentionally and without Von Hollow's consent." *Appellant's Appendix Vol. 2* at 21-22.

[27] A person who "knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent" commits criminal trespass, a Class A misdemeanor. Ind. Code § 35-43-2-2(b)(4). "It has long been the law in this state, as well as of many other states, that the penal statute relating to criminal trespass was not designed to try disputed rights in real estate, but such law was intended to punish those who willfully and without a bona fide claim of right commit acts of trespass on the lands of others." *Myers v. State*, 190 Ind. 269, 130 N.E. 116, 117 (1921); *see also*, *Hughes v. State*, 103 Ind. 344, 2 N.E. 956, 958 (1885) ("the machinery of the criminal law cannot be properly invoked for the redress of merely private grievances").

[28] Neither Jones nor Von Hollow owns the shorefront area. By separate one-year agreements with SFLECC, most recently executed in April 2016, each party was granted a license to use the shorefront area. The agreements provided, in relevant part, that at the point their properties touch the shorefront area, they could cross the shorefront area to gain access to the lake. The agreements also allowed both Jones and Von Hollow to maintain in the shorefront area an authorized structure for personal and private use upon written, prior permission from SFLECC. The agreements further provided that Jones and Von Hollow were not permitted to place or leave any material in the shorefront area, and

any installation of equipment in the area must be approved in writing by SFLECC. Jones was found to have criminally trespassed on the shorefront area. Under her agreement with SFLECC, however, Jones was permitted to access the shorefront area and did not need Von Hollow's consent to do so.[2]

[29] Based on the foregoing, we find the trial court properly determined that Von Hollow did not commit trespass; however, its conclusion that Jones committed criminal trespass under Ind. Code § 35-43-2-2 is not supported by the record and is clearly erroneous. Because the trial court erred when it determined that Jones committed criminal trespass, it also erred when it concluded that Von Hollow was entitled to costs of the action and reasonable attorney fees under Ind. Code § 34-24-3-1 (pecuniary loss as a result of property offenses). We, therefore, reverse the trial court's judgment on this issue.

## 3. Joint License

[30] Jones next argues the trial court erred when it directed the shorefront area to be "licensed jointly to Jones and Von Hollow by the SFLECC." *Appellant's*

---

[2] Jones and Von Hollow argue that the SFL agreements define their specific areas of ownership within the shorefront area and the areas that each can access. Testimony was presented at trial that the shorefront area that Jones could access was separate from that of Von Hollow. A previous SFL agreement was admitted into evidence that included property legal descriptions. Also, evidence was introduced that SFLECC intended to "redefin[e] the license area" and create boundaries within the shorefront area. *Exhibit 8* at 47, 49. However, these intended boundaries were never created. The previous SFL agreement that included legal descriptions is no longer in effect, as subsequent agreements have been executed by the parties; and, the most recently executed SFL agreements (from April 2016) do not define boundaries within the shorefront area or include property legal descriptions. The most recent agreements state only that each party is permitted to pass from the party's land "over such part of the adjoining lands of [SFLECC]." *Id*. at 74; *Exhibit A* at 13.

*Appendix Volume 2* at 20. Specifically, in its findings of fact and conclusions thereon, the trial court concluded, in relevant part, as follows:

I.        Contrary to the traditional definition of exclusive, the evidence clearly shows NIPSCO and its successor the SFLECC have, since their inception, granted both Jones and Von Hollow an exclusive Shore Front License to the very same Shore Front License Area.

J.        Jones and Von Hollow have each used the Shore Front License Area for a long period of time and each has made substantial improvements within the Shore Front License Area that should not be disrupted.

K.        *The Court directs that the Shore Front License Area shall be licensed jointly to Jones and Von Hollow by the SFLECC* . . . .

L.        The Court's grant of a joint or co-license to the Shore Front License Area does not permit or grant Jones any right to cross Von Hollow property without its permission. Jones may gain access to the Shore Front License Area by receiving Von Hollow's permission to cross its tail, from other parcels adjoining to the Shore Front License Area[,] or via Lake Freeman.

M.        This order does not guarantee or ensure either Von Hollow or Jones will continue to receive Shore Front Licenses from SFLECC.

N.        This order does not prohibit SFLECC from specifically defining Parties' license area to mitigate discord and animosity among quarrelling neighbors.

*Id*. at 20-21 (emphasis added).

[31] Recognizing the discord that existed between the parties with respect to the SFL agreements and each party's rights within the shorefront area, the trial court attempted to mitigate the situation by directing SFLECC to issue the parties joint licenses to use the area. However, SFLECC is not a party to this action. *See Ind. Dep't of St. Revenue v. Ind. Gamma Gamma of Alpha Tau Omega, Inc.*, 181 Ind. App. 664, 687, 394 N.E.2d 187, 201 (1979) (judgment cannot properly be rendered for or against one not a party to the action). Regardless of its good intentions, the trial court erred by directing SFLECC to issue joint licenses. We reverse the trial court's judgment in this regard.

[32] In conclusion, we affirm the trial court's conclusion that Jones was not entitled to a declaratory judgment that she had a prescriptive easement over Von Hollow's property. However, we reverse the trial court's conclusion that Jones committed criminal trespass, and, therefore, also reverse its conclusion that Von Hollow is entitled to costs and attorney's fees. Finally, we reverse the trial court's conclusion that directed SFLECC to issue joint licenses in the shorefront area.

[33] The judgment is affirmed in part and reversed in part, and we remand for further proceedings consistent with this opinion.

Najam, J. and Robb, J., concur.