

I N T H E

# Court of Appeals of Indiana

GSE Realty LLC, Gordon D. Emmert and Stacey I. Emmert,

*Appellants-Defendants*

v.

Leslie R. Miller,

*Appellee-Plaintiff*



**FILED**

Oct 22 2025, 9:03 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

October 22, 2025

Court of Appeals Case No.
25A-PL-669

Appeal from the Parke Circuit Court

The Honorable Hunter J. Reece, Special Judge

Trial Court Cause No.
61C01-2306-PL-194

---

**Opinion by Judge Tavitas**
Judges Vaidik and Felix concur.

**Tavitas, Judge.**

## Case Summary

[1] GSE Realty, LLC, Gordon Emmert, and Stacey Emmert (collectively, "the Emmerts") appeal the trial court's grant of a prescriptive easement and permanent injunction to Leslie Miller. This appeal involves a dispute between neighboring property owners over the use of a gravel private subdivision road located between the properties. It is undisputed that the road was constructed in the 1960s in the wrong location, and the current location does not correspond with the platted location of the road. A portion of the road is on the Emmerts' property, and a portion of Miller's house and pole barn are located on the platted location of the road.

[2] On appeal, the Emmerts argue that the evidence does not support the award of a prescriptive easement and that the injunction does not describe the prescriptive easement with particularity. We conclude that the award of a prescriptive easement is not clearly erroneous except for the portion of the prescriptive easement that is on the Emmerts' property and past Miller's residence. Because we are remanding, we do not address the Emmerts' argument regarding the particularity of the injunction. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## Issues

[3] The Emmerts raise three issues, which we consolidate and restate as:

I.    Whether the trial court erred by granting Miller a prescriptive easement.

II.    Whether the trial court's injunction described the prescriptive easement with sufficient particularity.

## Facts

[4] This dispute concerns the location and use of Lazy Lane in Spencer's Subdivision near Raccoon Lake. The subdivision's plat shows a thirty-foot wide private road, Lazy Lane, leading to and separating Lots 10 and 11 from Lot 12. The plat restrictions provide: "All that part of the real property included with said plat as shown as being intended for streets and alleys is granted and dedicated for the use of the owners of the real estate of said 'Spencer Subdivision', their agents, representatives, guests and employees." Ex. Vol. III p. 14 (Plaintiff's Ex. 10). In 1986, the following requirement was added to the subdivision's Deed of Dedication: "Main Roads are to be built and maintained for one (1) year by the seller. Maintenance after one (1) year shall be pro-rated by property owners. Private streets shall be maintained by the owners of contiguous or adjacent property, or by the private organization . . . ." *Id.* at 33 (Plaintiff's Ex. 21). Accordingly, Lazy Lane was platted as a private road to be maintained by the adjacent property owners, including Lots 10, 11, and 12.

[5] Darrell Allen and Mary Rector ("the Allens") previously owned Lots 10 and 11. The Allens built a residence on Lot 10 prior to 1967; put gravel on Lazy

Lane; and built a pole barn in 1975. The location of Lazy Lane has remained essentially the same since its construction in the 1960's.



*Figure 1:* (Ex. Vol. III p. 16; Plaintiff's Ex. 11 with labels added).

[6]     The Emmerts purchased Lot 12 in 2000 and transferred the property to GSE Realty, LLC, in 2021.[1]  Miller purchased Lots 10 and 11 in 2022.  According to Miller, the Emmerts "expanded [Lazy Lane] a little bit."  Tr. Vol. II p. 49.  The Emmerts, however, testified that the graveled area has increased toward their property "two to three feet" due to Miller's construction, gravity, and the slope of the area.  *Id.* at 106.

[7]     In March 2023, due to a dispute between the Emmerts and Miller, the Emmerts hired a surveyor to conduct a retracement survey.  The retracement survey demonstrated that Lazy Lane had been constructed in the wrong location.  Lazy Lane was constructed partially on the Emmerts' property; Miller's residence and pole barn are partially on the platted Lazy Lane; and Miller's graveled, parking area in front of his pole barn and residence is on the platted Lazy Lane.  On the survey below, the hatched area represents the original platted Lazy Lane ("Platted Lazy Lane"), and the area with circles represents the existing location of Lazy Lane as constructed ("Gravel Driveway").

---

[1] We note that, given GSE Realty's ownership of Lot 12, GSE Realty, not the Emmerts, should have been the defendant here.



*Figure 2*: (Appellants' App. Vol. II p. 30 with labels added).

[8] On June 8, 2023, Miller filed a complaint seeking a prescriptive easement. Miller later filed an amended complaint naming several additional property owners in the subdivision as defendants based on their interest in Lazy Lane.

Those additional defendants were either voluntarily dismissed or defaulted and are not parties to this appeal.

[9] A bench trial was held in February 2025. Charlotte Humrichouse, daughter of the Allens, testified that she owned Lots 10 and 11 in the 1960s with her husband and parents. She had an interest in the property until approximately 2007 and testified that the location of the driveway was unchanged between the 1960s and late 2000s. Humrichouse has visited the area two or three times a year since then and testified that the location of Lazy Lane has not changed. According to Humrichouse, when they owned the property, they had no reason to use the portion of Lazy Lane past their house and next to the Emmerts' residence.

[10] Miller testified that he uses the Gravel Driveway to get his boat in and out of the pole barn and to back out of his driveway. Miller admitted that a small portion of the house and pole barn encroach on the Platted Lazy Lane.

[11] Gordon Emmert testified that, during Miller's remodeling of his residence, the Emmerts were blocked from accessing their property on several occasions, which prompted them to obtain a survey. Gordon testified that he had no issue with Miller parking one row of cars on the Platted Lazy Lane near Miller's garage. The Emmerts did not request that Miller's pole barn or house be moved off the Platted Lazy Lane, and they agreed that a prescriptive easement for the structures on the Platted Lazy Lane should be granted.

On March 3, 2025, the trial court entered findings of fact and conclusions thereon and granted Miller's request for a prescriptive easement. The trial court found:

> I. Miller has established by clear and convincing evidence each of the elements for the establishment of a prescriptive easement, for Lazy Lane, as well as for the structures and driveway on Miller's property, which encroach upon the platted area for the roadway and this easement was established before Emmerts acquired their property. For about 60 years, the driveway has been used for ingress, egress, parking, and walking for the Miller property and as the physical location of the Encroachments. Such easements were legally established under the law in the 1980s and none of them or the adverse uses have been abandoned.
>
> * * * * *
>
> L. The property used [as] Lazy Lane, has not substantially changed in layout or use for about 60 years. The road is immediately visible and readily apparent to any observer of the land. The buildings on [Miller's] land, which encroach on the platted road, have been in the same position and location far longer than the statutory period requires. The land, driveway and Encroachments were clearly denoted in the real estate listing of the seller to Emmerts, which Emmerts had the opportunity to take notice of before Emmerts purchased Lot 12 from that seller.
>
> * * * * *
>
> N. The Court finds that since [Miller] and his predecessors in interest had no right, along with all other lot owners in the subdivision, to enter upon and across the [Emmerts'] Lot, and was therefore hostile and visible, to the extent is traversed Lot 12,

owned by [the Emmerts], and their predecessors in interest. Had the owners of Lot 12 raised these claims in the 1960s, when the first rocks were laid for Lazy Lane across Lot 12, certainly constructing a road across private property would have been actionable. In this case, time is not the [Emmerts'] friend.

Appellants' App. Vol. II pp. 220-21.

[13] The trial court granted:

(1) a prescriptive easement benefitting Lot 10 "for vehicular and foot traffic and parking over and across that portion of Lazy Lane, also described as the 'Gravel Driveway' on the Survey, that is on Lot 12;"

(2) a prescriptive easement benefitting Lot 10 "where it lies both within the Platted Lazy Lane (areas denoted with circles and overlapping hashmarks, on attached Exhibit A[2]) and also within Lot 10, to maintain the currently existing physical Encroachments and improvements (i.e. gravel parking area/driveway, house, pole barn and fence)";

(3) permanently enjoined the Emmerts and their successors in interest from: "(i) removing or relocating gravel from the Gravel Driveway and Lazy Lane, as depicted on the Exhibit A, whether or not the gravel is inside or outside the Platted Lazy Lane; (ii) obstructing or impeding in any manner the free, reasonable use by the holders of the aforesaid prescriptive easements or exercise of the rights associated therewith; and (iii) from entering upon, obstructing, or using [Miller's] Graveled Property, which

---

[2] Exhibit A was the retracement survey.

includes portions of Lot 10 covered by gravel and also any structures, despite those areas being within Platted Lazy Lane";

(4) enjoined Miller and his successors in interest from making further improvements or encroachments into the platted Lazy Lane or extending the actual Lazy Lane further into the Emmerts' lot; and

(5) ordered that "nothing in this Order shall prevent Emmerts from using that portion of Lazy Lane/ Gravel Driveway, within their own Lot 12, so long as their use does not obstruct or impede [Miller's] use, particularly that area to the northwest of the Gravel Driveway used as Lazy Lane, as it transitions to [Miller's] Graveled Driveway."

*Id.* at 222. The Emmerts now appeal.

## Discussion and Decision

[14] The Emmerts challenge the trial court's order granting a prescriptive easement and permanent injunction. The Emmerts filed a motion for findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52, and the trial court issued those findings of fact and conclusions thereon. Accordingly, we apply a two-tiered review. *Wysocki v. Johnson*, 18 N.E.3d 600, 603 (Ind. 2014). We "affirm when the evidence supports the findings, and when the findings support the judgment." *Id*. We do not "set aside the findings or judgment unless [they are] clearly erroneous," and we must give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." *Id*. (citing Ind. Trial Rule 52(A)). "Findings of fact are clearly erroneous only when they have no factual support in the record." *Id*. "[A] judgment is clearly erroneous if it

applies the wrong legal standard to properly found facts." *Id*. at 604. We review the trial court's legal conclusions de novo. *Gittings v. Deal*, 109 N.E.3d 963, 970 (Ind. 2018).

## I. Prescriptive Easement

[15] We first address the Emmerts' challenge to the trial court's grant of a prescriptive easement. "An easement is an interest in land that entitles the owner to use another's property for a specific purpose." *Morehouse v. Dux N. LLC*, 226 N.E.3d 758, 760-61 (Ind. 2024). "Under Indiana law, easements may arise by grant, prescription, or implication." *Id.* at 763. Prescriptive easements are at issue here and "arise from an ongoing trespass of property for at least twenty years." *Id.*

[16] Prescriptive easements generally "are not favored in the law." *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 405 (Ind. 2005). The party claiming a prescriptive easement, thus, must meet "stringent requirements." *Id.* Historically, "[a] party claiming the existence of a prescriptive easement must provide evidence showing 'an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right.'" *Id.* (quoting *Carnahan v. Moriah Prop. Owners Ass'n., Inc.,* 716 N.E.2d 437, 441 (Ind. 1999)).

[17] In *Fraley v. Minger,* 829 N.E.2d 476 (Ind. 2005), our Supreme Court reformulated the elements necessary to establish adverse possession and held "the claimant in such circumstances must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and (4) duration." *Wilfong*, 838 N.E.2d at

406. In *Wilfong*, our Supreme Court held that "[t]his reformulation applies as well for establishing prescriptive easements, save for those differences required by the differences between fee interests and easements." *Id.* These four elements are established by clear and convincing proof of the following:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,
>
> (4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* at 406 n.1 (citing *Fraley,* 829 N.E.2d at 486).

[18] The elements must be satisfied for a period of twenty years. *See* Ind. Code § 32-23-1-1 ("The right-of-way, air, light, or other easement from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty (20) years."). "Whether a

prescriptive easement exists is a question of fact." *Jones v. Von Hollow Ass'n, Inc.*, 103 N.E.3d 667, 673 (Ind. Ct. App. 2018).

## A. Parking on the Platted Lazy Lane and Gravel Driveway

[19] The Emmerts first argue that Miller failed to present evidence of parking on either the Platted Lazy Lane or the Gravel Driveway for more than twenty years. Regarding the Platted Lazy Lane, we note that Gordon Emmert testified that he had no issue with Miller parking one row of cars on the Platted Lazy Lane near Miller's garage. *See* Tr. Vol. II p. 116. In general, a party cannot present a different argument on appeal than he presented to the trial court. *See Gladstone v. W. Bend Mut. Ins. Co.*, 166 N.E.3d 362, 372 (Ind. Ct. App. 2021) ("A party cannot rely on one reason for an objection at trial and then assert another argument for objection on appeal."), *trans. denied*. Accordingly, this issue is waived.

[20] As for parking on the Gravel Driveway, part of which is on the Emmerts' property, the trial court granted Miller a prescriptive easement for vehicular and foot traffic and parking over and across the area labeled as "Gravel Driveway" labeled on the Survey. Appellants' App. Vol. II p. 222. This order grants Miller a prescriptive easement to park on the Gravel Driveway, which includes part of Lot 12, and could potentially allow Miller to park in a manner that would block the Emmerts' only access to their residence and parking area. Miller testified that he used the Gravel Driveway when he was backing his boat out of his shed, but Gordon Emmert testified that it was not necessary for Miller to drive beyond Point A on Exhibit M below. We note that

Humrichouse testified that she and her family had no reason to use the portion of Lazy Lane past their house, which would correspond to Point A on Exhibit M. We conclude that there is no evidence of historical, continuous parking by the owners of Lots 10 and 11 on the Gravel Driveway beyond Point A as labeled on Exhibit M.



*Figure 3*: (Ex. Vol. III p. 73; Ex. M with labels added). Accordingly, we reverse the trial court's grant of a prescriptive easement beyond Point A as it relates to

vehicular traffic, foot traffic, or parking by the owners of Lot 10 and 11 in the Gravel Driveway.

### B. Use of Gravel Driveway on Emmerts' Property

[21] Next, the Emmerts argue that Miller failed to present evidence of the continuous use of the Gravel Driveway on Lot 12, which is owned by the Emmerts. Humrichouse, however, testified that the location of Lazy Lane has remained unchanged since the 1960s. The trial court found that "the amount of land covered in stone is somewhat greater now, particularly around [Miller's] garage and parking area, but generally the road is unchanged since the 1960s." Appellants' App. Vol. II p. 216. The Emmerts' arguments regarding other portions of Humrichouse's testimony and other exhibits are merely requests that we reweigh the evidence, which we cannot do. The trial court's finding regarding a prescriptive easement over the Gravel Driveway is not clearly erroneous, except as noted above beyond Point A.

### C. Adverse Use

[22] Additionally, the Emmerts briefly argue that Miller failed to present evidence that his use of the "subject property was adverse." Appellants' Br. p. 27. The trial court found that "Miller and his predecessors in interest never asked for permission to use the roadway, were never given such permission, and were never challenged in its use since 1962, until the current lawsuit." Appellants' App. Vol. II p. 220. The Emmerts cite to no evidence that Miller or his predecessors were given permission to build their house or pole barn on Platted

Lazy Lane, park on Platted Lazy Lane, or utilize the Gravel Driveway to access Lots 10 and 11. Accordingly, we cannot say the trial court's finding regarding adverse use is clearly erroneous.

## II. Permanent Injunction

[23] Finally, the Emmerts challenge the particularity of the permanent injunction, which provides:

> [The Emmerts] and their successors in interest are permanently enjoined from (i) removing or relocating gravel from the Gravel Driveway and Lazy Lane, as depicted on the Exhibit A, whether or not the gravel is inside or outside the Platted Lazy Lane; (ii) obstructing or impeding in any manner the free, reasonable use by the holders of the aforesaid prescriptive easements or exercise of the rights associated therewith; and (iii) from entering upon, obstructing, or using [Miller's] Graveled Property, which includes portions of Lot 10 covered by gravel and also any structures, despite those areas being within Platted Lazy Lane. [Miller] shall be hereafter entitled to quiet use and enjoyment of this area, despite these improvements laying in the Platted Lazy Lane.

Appellants' App. Vol. II p. 222. According to the Emmerts, Indiana Trial Rule 65(D) requires an injunction to be "specific in terms," and the injunction "shall describe in reasonable detail . . . the act or acts sought to be restrained." The Emmerts argue that the injunction here fails to provide "clear notice to the parties involved and ensure compliance." Appellants' Br. p. 13. In particular, they point out that, although the trial court's order references the survey, *see*

*supra* Figure 2, the survey does not describe the width of the prescriptive easement on Lot 12.

[24] We do not address the Emmerts' argument because, given our reversal of a portion of the trial court's granted prescriptive easement and our remand, it will be necessary for the trial court to revise its order and description of the prescriptive easement. The issues raised in the Emmerts' argument may be considered on remand.

## Conclusion

[25] We reverse the trial court's grant of a prescriptive easement to Miller regarding the Gravel Driveway beyond Point A as shown on Figure 3 (Exhibit M). The Emmerts, however, have failed to demonstrate that the trial court's grant of a prescriptive easement on the remaining property at issue here is clearly erroneous. Accordingly, we affirm the remaining prescriptive easement. Given our remand for correction of the prescriptive easement, we do not address the Emmerts' argument regarding the permanent injunction. Accordingly, we affirm in part, reverse in part, and remand.

[26] Affirmed in part, reversed in part, and remanded.

Vaidik, J., and Felix, J., concur.

ATTORNEY FOR APPELLANTS

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

William W. Gooden
Kristin A. McKinney
Jennifer F. Perry
Clark, Quinn, Moses, Scott & Grahn, LLP
Indianapolis, Indiana